## No. 14,434.

### MILLIKIN, Executrix of the Estate of SCHUYLER *v.* THE PEOPLE
(102 P. [2d] 901)

Decided March 4, 1940.   Rehearing denied May 6, 1940.

Mr. FORREST C. NORTHCUTT, for plaintiff in error. Mr. EUGENE D. MILLIKIN, of counsel.

Mr. BYRON G. ROGERS, Attorney General, Mr. J. GLENN DONALDSON, Assistant, Mr. CHARLES H. QUEARY, Special Assistant, for the people.

Mr. MORRISON SHAFROTH, amicus curiae.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS controversy raises the question whether a transfer inter vivos, made in trust, as disclosed by the record, is within the provisions of our Inheritance and Succession Tax Law, chapter 85, '35 C.S.A., section 7 (d) that part of which, pertinent to the issue here involved, is as follows:

"The transfers enumerated in the preceding section shall be taxable if made:

\*  \*  \*

"(d) By gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. A transfer of property in respect of which or in consideration of which the transferor reserves to himself or purchases a life income or interest shall be deemed to have been intended to take effect in possession or enjoyment at death; provided, that if the transferor reserves to himself less than the entire income or interest, the transfer shall be deemed taxable hereunder only to the extent of a like proportion of the value of the property transferred."

In view of the importance of the questions involved, and this being a case of first impression in Colorado, we deem it appropriate, eliminating formal and irrelevant parts, to set out in full the trust indenture agreement executed March 30, 1931, now before us. It is as follows:

"First

"The grantor, subject to the limitations and reservations hereinafter set forth, has given and granted and by these presents does give and grant unto the grantee, in trust as hereinafter specified, the following described property, to wit:"

Here follows description of property conveyed.

"Together with all the rents, issues, proceeds, income and/or profits therefrom accruing during the life of this trust; [Immediately following is the handwritten notation] and such other property, if any, which grantor may transfer, give or convey unto grantee, subject to the terms hereof during the existence of this trust, by writings duly acknowledged." In the margin to the left of the notation is written in longhand, "ok. K.C.S. A.S."

"Second

"Said property above described and referred to, and any property and/or proceeds received by grantee in

the exercise of the powers vested in grantee in paragraph Fourth hereof, shall be and constitute the trust property (hereinafter referred to as the trust property) and is granted to grantee, in trust as aforesaid, subject to the following limitation and reservation, to wit:

"An indebtedness created at New York Trust Company, of one hundred and seventy-five thousand dollars ($175,000); the trust property shall continue subject thereto until paid from the trust property, or the proceeds thereof, under the management and direction of the grantee.

### "Third

"Subject to the provisions of paragraph Second, the objects and purposes of this trust are as follows:

"(a) The reservation, and, if possible consistent with the following clause (b), the increase of the principal amount of said trust property under the management and direction of the grantee.

"(b) The use of income therefrom by the grantee, without restriction, for such purposes as grantee may from time to time determine in her sole discretion, whether such use be for reinvestment or for purely personal uses and purposes of the grantee; and may be used for such personal uses and purposes even though such use compels resort by the grantee wholly or partially to the principal of said trust in order to meet the requirements of paragraph Second. If income is used by grantee for such personal uses or purposes, no obligation shall rest upon grantee either (a) to reimburse the said trust for amounts so used; or (b) to render any account to the trust therefor other than a statement of the amount used by grantee from said income in each year for such personal uses or purposes.

### "Fourth

"Subject to the provisions of paragraph Second hereof, full power is hereby vested in the grantee to handle, manage, control, sell, loan, pledge, mortgage, exchange,

invest, reinvest, and/or otherwise dispose of said trust property above described and the rents, issues and profits thereof in such manner and upon such terms and conditions as grantee in her sole discretion may determine.

"Except for the duty of using good faith in the execution of this trust, the grantee shall be under no personal liability in connection therewith; no personal liability shall rest or be imposed upon grantee for payment of any obligations resting upon said trust property, but any present liability existing and/or future liability created against the same or any part thereof, including payment of any and all taxes and/or insurance, and/or other expenses for the upkeep and/or protection of said property, shall be charged against the principal and/or income of said trust property and be payable and paid by said grantee therefrom. Income taxes, if any, resulting to either grantor or grantee personally affecting or relating to said trust property in any way, as well as income taxes, if any, chargeable to said trust shall be chargeable against and payable and paid from said property and grantee shall not be personally responsible therefor, nor shall grantee be personally responsible for any claims, demands, actions, or causes of action of any kind, or judgments, if any, obtained thereon, growing out of the administration by grantee of said trust property, but same shall be chargeable against and payable and paid from said property.

"Grantee shall render to grantor once each year, commencing March 30, 1932, and on March 30th of each year thereafter ensuing, a statement showing in detail the income from said trust property, the expenditures made, and operations of every kind had and done during the twelve months preceding said March 30th in each year.

"Fifth

"The trust hereby created may be terminated and/or revoked at any time upon mutual agreement of the

parties hereto upon such terms as may be specified by them in such agreement, but otherwise shall continue until the death of the grantor or until the death of the grantee.

"This trust shall be automatically terminated upon the death of the grantor, and in such event the then existing property of the trust, with all accumulations and proceeds thereof, shall be and become the sole property of the grantee as an individual.

"This trust shall be automatically terminated upon the death of the grantee, and in such event the then existing property of the trust, with all accumulations and proceeds thereof, shall be and become the sole property of the grantor as an individual.

"In the event of the disability of the Grantee and consequent inability to act as trustee hereunder, the grantor shall become the trustee for the purposes of this instrument during the period of such inability to serve, and during such period the expenditures by grantor acting as trustee shall be limited to those specified in paragraph Second and those required for the upkeep, protection, and/or preservation of the trust property, and/or taxes thereon.

### "Sixth

"The grantee, by her signature hereto, hereby accepts this agreement and agrees to serve as such trustee in accordance with the terms hereof."

Subsequently, December 3, 1931, a change was made in the first paragraph of the section designated "Fifth" of the agreement, as follows: "Now, therefore, in consideration of the premises, and for the consideration set forth in said trust agreement, parties hereto have agreed and hereby do agree, that said trust indenture shall be modified in this respect, to wit, that instead of the same being revocable upon joint consent of parties thereto, the same shall be and hereby is declared to be irrevocable."

The trial court found the effect of the trust involved was to reserve a life interest in the donor; that the transfer is taxable under section 7 (d), supra; that the amount of the tax due thereon is $34,649.42, and entered judgment accordingly. Plaintiff in error, to whom we hereinafter refer as executrix, assigns error and seeks reversal.

The grantor in the trust agreement died testate July 31, 1933, at the age of fifty-six years, his death resulting from an accident which occurred July 17, 1933. His will was admitted to probate in the Denver county court, where it now is in process of administration. December 18, 1936, the Colorado inheritance tax commissioner reported the transfer for assessment and taxation on the grounds that it was made in contemplation of death, or intended to take effect in possession or enjoyment at or after the death of grantor. Thereafter executrix, who also was the grantee in the trust agreement, filed objections, in which it was alleged that neither the transfer nor the agreement of December 3, 1931, was in contemplation of death; that the transfer was not intended to take effect in possession or enjoyment at or after the death of decedent; that it was intended to take effect in possession and enjoyment of grantee on the date of the indenture; that the foregoing was shown by the indenture and by the practice and declaration of the parties. It was admitted by the state that the trust was not made in contemplation of death, which eliminates that issue.

The nub of this controversy is found in the following language of the trust indenture: "This trust shall be automatically terminated upon the death of the grantor, and in such event the then existing property of the trust, with all accumulations and proceeds thereof, shall be and become the sole property of the grantee as an individual. This trust shall be automatically terminated upon the death of the grantee, and in such event the then existing property of the trust, with all accumula-

tions and proceeds thereof, shall be and become the sole property of the grantor as an individual." Both parties referred to the donor's alleged life interest as a "possibility of reverter." Counsel for executrix argue that the transfer was intended to and did take effect in possession and enjoyment of the grantee on the date of the indenture; that the donor during his lifetime intended to and did make a complete and irrevocable gift to his wife personally and full ownership, control, possession and enjoyment of the transferred property, its reinvestment and the income thereof; that neither the possession nor the enjoyment of the transferred property or any part thereof was intended to or did take effect at grantor's death; that, therefore, neither the ownership nor the remainder was in abeyance. To sustain these contentions, counsel for executrix primarily relied in the trial court, and they rely here, upon two cases: *Helvering v. St. Louis Union Trust Co.,* 296 U. S. 39, 56 Sup. Ct. 74, 80 L. Ed. 29, and *Becker v. St. Louis Union Trust Co.,* 296 U. S. 48, 56 Sup. Ct. 78, 80 L. Ed. 35.

After oral argument of the present case here, the Supreme Court of the United States, on January 29, 1940, in *Helvering v. Hallock* (309 U.S. 106, 60 Sup. Ct. 444, 84 L. Ed. 382), involving five cases — Nos. 110, 111, 112, 183 and 399 — expressly rejected as untenable the doctrine of nontaxability as applied to the facts in the St. Louis Trust cases, which were somewhat similar to those involved here, and adhered to the doctrine laid down in *Klein v. United States,* 283 U. S. 231, 51 Sup. Ct. 398, 75 L. Ed. 996. In *Helvering v. Hallock, supra,* in referring to the St. Louis Trust cases, and to *Klein v. United States,* the court said: "All involve dispositions of property by way of trust in which the settlement provides for return or reversion of the corpus to the donor upon a contingency terminable at his death. * * * In none of the three cases did the dominion over property which finally came to the beneficiary fall by virtue of the grantor's will, except by his provision that

his own death should establish such final and complete dominion." The rationale and distinctions between these cases are found in *Helvering v. Hallock, supra,* and we deem repetition unnecessary.

In *Klein v. United States,* supra, to which the United States Supreme Court now reverts as a correct statement of the law, the taxpayer, as in the instant case, contended that decedent had reserved a mere "possibility of reverter," and that this was not sufficient to bring the conveyance within the realm of a taxable estate. This contention was rejected. While we are not bound, in the interpretation of state tax statutes, by these federal decisions, they are persuasive and we give to them great weight in the determination of similar issues. We recognize also that we are here concerned with a state succession tax and not an estate tax.

The language of section 7 (d), supra, relating to a life estate or interest, has no application to the terms of the instrument involved here. In fact, the language in section 7 (d), relating to a life estate or interest, is illustrative only of certain kinds of taxable transfers. No tax on a life estate or life interest is here involved. Only the interest in property, to which the transferee succeeds at or after death, is our concern, and the assessment before us is based upon the fair market value of the principal corpus of the trust at the date of death.

To determine the question of taxability under section 7 (d), supra, we proceed to examine the trust indenture in the instant case. Does it contain a taxable transfer of property "By gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor"? We think it does.

We first quote what counsel for executrix state to be their conception of the trust indenture, as follows:

"By the indenture the property was given and granted to the grantor's wife with the widest powers of control and disposition subject, however, to obligations in trust form respecting grantor's indebtedness at the New York

Trust Company of $175,000.00. The gift and grant were to be supplemented with a warranty deed to grantee personally of the real property described. Grantee personally was given the income. Her personal right to the personal use of the income is so unrestricted that she may invade the corpus to pay the grantor's debt. Grantor has the right to an annual statement from grantee showing income, expenditures and operations of preceding year. *The trust terminates on the death of grantor or grantee.* If grantor predeceases grantee the property shall be and become the sole property of grantee, and if grantee predeceases grantor the property shall be and become the sole property of grantor. [Italics ours].

"On December 3, 1931, the indenture was supplemented by an agreement in writing whereby the indenture formerly revocable on mutual agreement of the parties upon such terms as they might fix, became irrevocable."

Supplementing this statement, we add that the grantee received this property "In Trust," as trustee; that it remained trust property until the trust terminated; that the corpus of the trust could only be invaded by the trustee to pay the grantor's specified indebtedness; that at the time of the death of either grantor or grantee the corpus of the trust would become the sole property of the survivor "as an individual," at which time the trust would terminate; that the trust included all income "accruing during the life of this trust"; that the grantee agrees "to serve as such trustee in accordance with the terms of the trust." The trustee testified that after the execution of the trust, and until the death of the grantor, she held, managed and operated the property under the terms of the trust agreement.

From this, and the terms of the trust indenture generally, the conclusion is inescapable that before grantee could obtain possession and enjoyment of the corpus of the trust estate "as an individual," the death of grantor became a necessary and indispensable precedent. Thus, the imposition of the tax is justified. Under these cir-

cumstances, the contention of counsel for executrix that the grantor's conveyance placed the possession and enjoyment of the corpus of the trust estate in the beneficiary prior to grantor's death, is clearly untenable. The only interest which the wife of decedent had in the corpus of the estate prior to his death, was a possibility of obtaining the same if she survived him. The death determines who shall receive the corpus.

■ The succession tax ·is one imposed on the privilege of receiving property—it is not laid on the donor, but on the beneficiary. *In re Estate of Rising,* 186 Minn. 56, 242 N. W. 459; *In re Estate of Toy,* 220 Ia. 825, 263 N. W. 501; *Sherman v. Tax Commission,* 125 O. St. 367, 181 N. E. 539; *In re Ellis' Estate,* 169 Wash. 581, 14 P. (2d) 37; *Estate of Ogden,* 209 Wis. 162, 244 N. W. 571.

■ The objective of the legislature in passing the succession tax act was to prevent evasion of inheritance tax. The tax imposed by section 7 (d), supra, is intended to reach all transfers of any interest in property from a decedent to his successors, which take effect at or after his death. This conclusion is in accord with the great weight of authority. In the development of the principles of succession taxation the states of Connecticut and New Jersey have taken a leading part. Their statutes relating to this subject show a close similarity to ours, and their interpretation by the courts of those states sustain the contention of the attorney general here. *In re Estate of Perry,* 111 N. J. Eq. 176, 162 Atl. 146; *Koch v. McCutcheon,* 111 N. J. L. 154, 167 Atl. 752; *Hollander v. Martin,* 123 N. J. Eq. 52, 195 Atl. 805; *Blodgett v. Guaranty Trust Co.,* 114 Conn. 207, 158 Atl. 245; *Bryant v. Hackett,* 118 Conn. 233, 171 Atl. 664; *Hackett v. Bankers Trust Co.,* 122 Conn. 107, 187 Atl. 653.

The Supreme Court of Oregon, in the well-reasoned case of *Brill v. Holman* (160 Ore. 118, 84 P. (2d) 105), arrives at the same conclusion as that announced in the New Jersey and Connecticut cases, and also cites a number of other authorities. The factual situation in the

Brill-Holman litigation is similar to that in the instant case. The grantor retained nothing but the possibility of reverter; the state was not taxing the life estate, and there was no issue as to gifts in contemplation of death.

■ The conveyance of the corpus of the estate under the trust indenture was a "transfer" of an interest in property within the meaning of section 3, chapter 85, '35 C. S. A. Formal distinctions pertaining to the law of real property, such as contingent and vested remainders and the various niceties of the art of conveyancing, are irrelevant criteria in this field of taxation. *Helvering v. Hallock, supra; Klein v. United States, supra.* Counsel for executrix, to sustain their contention, cite *People v. Northcutt,* 101 Colo. 283, 72 P. (2d) 1119, which was an affirmance without written opinion. The state contends that the facts in that case and those in the case at bar are not analogous. When there is a written opinion it serves as a precedent only on the point decided; hence, an affirmance without written opinion cannot be considered by us as a precedent in subsequent litigation.

The trial court committed no error in sustaining the assessment.

■ Counsel for executrix assert the unconstitutionality of section 7 (d), supra. The claim is made that a succession tax that attempts to reach an absolute gift inter vivos, and which completely takes effect prior to the death of the grantor, violates due process of law under state and federal Constitutions. We do not construe the transfer by the trust indenture before us to be such a gift; consequently there is no merit in this claim. It also is contended that the taxation of the transfer here involved violates section 21 of article V of the state Constitution. It is argued that the taxability of an absolute gift which takes effect at the time of the execution of the trust and before the death of the transferor is not suggested by the title. There is no such gift involved here. It also is contended that the title of the

act contains more than one subject. This contention also, we think is without merit.

■ Counsel for executrix offered extrinsic testimony to show the grantor's intention as evidenced by subsequent acts, for the purpose of supporting the claim of an absolute gift prior to the death of the grantor. The trial court permitted executrix to amend her objections to the order fixing the inheritance tax in that regard, but sustained the state's objection to practically all of this evidence. The reason for the court's ruling is not clear in the record, but it may be assumed that it considered the evidence immaterial to the issue. That the court had before it sufficient facts, especially the trust indenture, upon which to base its finding cannot be questioned. Although it is argued by counsel for executrix that the parole-evidence rule does not prohibit the admission of such testimony, this rule seems not to be involved. The rejection of this evidence was not prejudicial.

■ After the assessment, executrix filed written objections thereto under the provisions of section 50, chapter 85, '35 C. S. A. Thereafter, to narrow the issues, the state filed an answer to these objections. Subsequently the court permitted the objections to be amended, and counsel for executrix argue that the failure of the state to amend its answer and deny the new matter, admitted the allegations in the amended objections. Based upon this argument, they contend that the court should have made findings and entered judgment in favor of the executrix, and that its failure to do so was error. This position clearly is erroneous. Under section 50, supra, which governs these proceedings, no answer by the state was necessary. The issues were made by the inheritance tax commissioner's report to the county court, the entry of an order thereon fixing the tax, giving notice to all interested parties, and the filing of written objections to the assessment. Under this procedure, there is no implied admission of any fact alleged in the objec-

tions. The court's refusal to make findings and enter judgment in favor of executrix was not error.

The judgment is affirmed.

MR. CHIEF JUSTICE HILLIARD not participating.

MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE YOUNG dissent.

MR. JUSTICE YOUNG dissenting.

I am of the opinion that the judgment of the county court assessing the tax should be reversed and the cause remanded with the directions hereafter indicated. For this reason I respectfully dissent from the opinion of the court.

As I view the matter we are confronted merely with the construction of a statute of our own state relating to inheritance and succession taxes as applied to the trust agreement set forth in the court's opinion. The bases of the Colorado inheritance and successions tax and the federal estate tax are different. The incidence of the federal tax and the incidence of the state tax are not, or at least may not be, upon the same property or property right. The former is an excise tax based on the exercise of the right or privilege of transferring one's estate at death and its incidence is upon the entire estate of decedent; the latter is an excise tax based on the exercise of the right or privilege of receiving property or a beneficial interest therein from a person by reason of his death. The incidence of such a tax is solely upon the property or beneficial interest therein so acquired.

An examination of the trust agreement clearly demonstrates that the grantee immediately upon the execution of the trust, or at least upon the surrender of the right by grantor to revoke it, received an indefeasible right to the income from the corpus thereof in possession and enjoyment for the term of her life. The terms of the trust were explicit that the grantee should have

the power to use the income therefrom for any purpose she desired without any restrictions whatsoever. The property transferred was subject to the payment of a debt of grantor in an amount of $175,000 which the trust indenture provided in effect should be a lien on the corpus of the trust. The grantee might pay the debt out of her own money if she so elected, or out of the income from the corpus, which she had a right to expend as she saw fit, but she was not obligated to pay it out of either her own money or the income from the trust. The only enforceable obligation against her, as trustee, was the reservation that the $175,000 be paid out of the corpus of the trust. By its terms the trust terminated upon the death of either grantor or grantee and all of the corpus, accretions, additions, if any, and income added thereto by grantee, if any, became the absolute property of the survivor. The grantor predeceased the grantee. The sole question for determination under this state of facts is, What, if anything, did the grantee inherit or to what property did she succeed upon the death of the grantor that is subject to be taxed under section 7, chapter 85, '35 C. S. A.?

Section 3 of chapter 85, '35 C.S.A., provides: "The word 'transfer' as used in this chapter shall be taken to include the passing of property or any interest therein or income therefrom, *in possession or enjoyment,* present or future * * * *by* inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, *gift in the manner herein described.*"

Section 6 of said chapter reads: "A tax is hereby imposed, *under the conditions and subject to the exemptions and limitations hereinafter prescribed,* upon transfers, in trust or otherwise, of the following property, or any interest therein or income therefrom." Here follows an enumeration of different kinds of property which includes property of the character conveyed by the trust indenture involved in this case.

Section 7 provides: "The transfers enumerated in the

preceding section shall be taxable if made: * * *

"(d) By gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. A transfer of property in respect of which or in consideration of which the transferor reserves to himself or purchases a life income or interest shall be deemed to have been intended to take effect in possession or enjoyment at death; provided, that if the transferor reserves to himself less than the entire income or interest, the transfer shall be deemed taxable hereunder only to the extent of a like proportion of the value of the property transferred.

"(f) If any transfer specified in paragraph (c), (d) and (e) of this section is made for a valuable consideration, so much thereof as is the equivalent in money value of the money value of the consideration received by the transferor shall not be taxable but the remaining portion shall be."

It is clear under section (f) supra, read in connection with the trust indenture creating the lien on the property thereby conveyed to secure payment of grantor's debt of $175,000 that, when the trust was accepted by the grantee and administered in accordance with its terms—as the testimony shows it was—there was, if not an express promise by the grantee, at least a legally enforceable implied promise by her to pay the $175,000 out of the corpus of the trust or otherwise. This promise was fulfilled when she paid $75,000 of the debt out of her own funds and the remaining $100,000 out of her own funds or out of the funds of the trust estate. If she paid the $100,000 out of income she paid it out of her own funds. If she paid it out of the corpus she was nonetheless keeping her promise. The promise by her to pay the $175,000 was a binding promise, was worth $175,000, and constituted a consideration which the grantor received for the conveyance. Paragraph (f) was enacted to cover such a situation. Construing and applying this paragraph its effect is: The transfer of the

corpus of the trust under paragraph (d) to the extent of the consideration received therefor, to wit a binding promise to pay grantor's debt of $175,000, of the value of $175,000—for it was in fact paid and of that value—*shall not be taxable,* but the remaining portion, that is, the corpus of the trust, less the $175,000, shall be. In the light of paragraph (f) the $175,000, however paid, if not credited fully heretofore, should be credited to grantee as a reduction pro tanto of the corpus of the trust taxable at grantor's death.

I am of the opinion that the transfer effected by the trust indenture is, under section 7, supra, taxable as a gift or grant intended to take effect in possession or enjoyment at the death of the transferor, and the value of that to which the grantee succeeds is the value on which the tax is to be imposed.

I am in accord with the holding in the cases of *Helvering v. Hallock,* Nos. 110, 111, 112, 183, and 399, decided by the Supreme Court of the United States at the October Term, 1939, and the case of *Klein v. United States,* 283 U.S. 231, 51 Sup. Ct. 398, 75 L. Ed. 996, that the rule of construction to be applied to a revenue measure is not necessarily limited by the technical rules relating to conveyancing. The Klein case involved a deed executed by a husband to his wife. The husband predeceased his wife. The facts sufficiently appear from the following quotation from the opinion: "The two clauses of the deed are quite distinct—the first conveys a life estate; the second deals with the remainder. The life estate is granted with an express reservation of the fee, which is to 'remain vested in said grantor' in the event that the grantee 'shall die prior to the decease of said grantor.' By the second clause the grantee takes the fee in the event—'and in that case only'—that she shall survive the grantor. It follows that only a life estate immediately was vested. The remainder was retained by the grantor; and whether that ever would become vested in the grantee depended upon the con-

dition precedent that the death of the grantor happen before that of the grantee. The grant of the remainder, therefore, was contingent. See 2 Washburn, Real Prop. (4th Ed.) pp. 547, 548, 559, §1. The decisions of the Supreme Court of Illinois, the state where the deed was made and the property lies, support this conclusion. *Haward v. Peavey,* 128 Ill. 430, 439, 15 Am. St. Rep. 120, 21 N. E. 503; *Baley v. Strahan,* 314 Ill. 213, 217, 145 N. E. 359."

With reference to the law, the court, speaking through Mr. Justice Sutherland, said: "Nothing is to be gained by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed."

This construction is in harmony with the provisions of the Colorado act. Paragraph (c) of section 7 thereof contains the following statement: "It is hereby declared to be the intent and purpose of this chapter to tax any and all transfers which are made in lieu of or to avoid the passing of property transferred by testate or intestate laws." Herein, I believe, lies the rule governing the construction we should place on the statute. Whatever beneficial interest grantee acquires, that she did not have before, by reason of the grantor's death is taxable. If a beneficial interest, not given in contemplation of death—and it is agreed between the parties it was not in the instant case—was acquired by the grantee by the grantor's death, the difference in value between what interest the grantee already had in the property in the grantor's lifetime and that which she in fact owned and possessed at the time of grantor's death is the measure of the taxable interest. The statute under consideration does not impose a tax on gifts as

such. Gifts in contemplation of death and within two years of death, unless shown not in contemplation of death, are specifically made taxable transfers, and one who receives property under either condition owes a tax. In the instant case an income for life or a life estate for the life of the grantee vested in her immediately upon the execution of the trust indenture. The grantor reserved none of the income and no interest in the property other than the "limitation and reservation" respecting his $175,000 indebtedness; so the conveyance does not come under the first and specific exception in paragraph (d) of section 7, supra, which provides that a transfer with a reservation of the entire beneficial income is to be deemed to have been intended to take effect at death. This case is governed, as I view it, by the proviso that follows the foregoing exception. Grantor reserved less than the entire income or interest; he reserved what plaintiff in error says is a possibility of reverter, effective only if grantee predeceased him. As heretofore stated it is the effect of a fact situation that should determine taxability under a revenue measure rather than the means adopted to produce that effect. The effect of grantor's death was to cause the grantee to succeed to the entire remaining interest in the property other than her life interest in the entire income. The proviso is specific that in such a case the transfer is taxable on the same proportion of the entire income as the valuation of the interest which grantee acquires at death bears to the valuation of the entire property at death.

In my opinion the judgment should be reversed and the cause remanded with instructions to the trial court to credit the full $175,000, or such part thereof as has not been heretofore credited, to reduce the value of the trust passing at death; and to ascertain the value of grantee's life interest in the income of the trust, allow such value as a deduction from the value of the corpus, and assess the tax on the value of the remainder.