No. 10,505.

WILLIAMS v. FUNDINGSLAND.

Decided November 5, 1923.   Rehearing denied January 7, 1924.

Action to recover unpaid purchase price of land.   Judg-
ment for plaintiff.

*Reversed.*

1. ESTATES—*Remainder.*   A remainder must have some precedent
   particular estate to support it.

2. WILLS—*Construction.*   The paramount rule in the construction
   of a will, is to ascertain from the instrument in its entirety
   the intention of the testator, and give it effect if not prohibited
   by law.

3. WORDS AND PHRASES—*"Wife," "Husband,"—"Widow," "Widower."*
   Discussed and distinguished.

4. WILLS—*Construction.*   The use of different words in a will ap-
   plying to the same subject-matter, indicates that the testator
   had in view different results.

5.    *Construction.*   Construing a will giving real estate to the tes-
   tator's daughter with remainder "to her husband should she
   leave a husband surviving her," this language is held to in-
   clude any husband she had at her death, and not restricted
   to a husband living at the time of the death of the testator.

*Error to the District Court of Kit Carson County, Hon.*
*Arthur Cornforth, Judge.*

Messrs. IRWIN & FRIEND, for plaintiff in error.

Mr. LOUIS VOGT, Messrs. ALLEN & WEBSTER, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE parties made a written contract whereby plaintiff Fundingsland agreed to sell, and defendant Williams agreed to buy, certain lands in the state of Kansas; the seller therein covenanting to furnish an abstract of title showing "the title to be good and marketable." The buyer paid $2,000 of the purchase price when the contract was signed, but refused to pay the remainder when due, on the ground that the abstract furnished showed the title to be substantially defective. This action is by the seller against the purchaser to recover the unpaid balance of the purchase price, and the defendant counterclaims for recovery of the partial payment made.

Trial was to the court without a jury, on a stipulation of facts which recited that if therefrom the court found the title was good and marketable, judgment should be rendered for plaintiff, otherwise for the defendant, as prayed. Having found the title to be marketable, the judgment went for the plaintiff.

Title is deraigned and based upon conveyances made by Susie E. Hudson, widow, and her four children. Their title came through the last will of James Bullock, deceased, father of Mrs. Hudson. Thereby Bullock's residuary estate, which includes the lands in question, was devised one-half thereof to his son, William, and one-half thereof to his daughter, Susie E. Hudson, for their natural lives, and a possible second life estate to the surviving wife of the former, and the surviving husband of the latter, with remainder over to the bodily heirs of the son and daughter respectively. The clause of the will pertaining to the daughter, reads: "And my daughter, Susie E. Hudson,

shall take the undivided half of the real estate for life, and at her death the said title shall vest in————·————and her said bodily heirs shall own the same, as if she had died intestate owning the same, except I especially will and bequeath to her husband *should she leave a husband surviving her*, that he take one-third part of the real estate for his use and benefit during his natural lifetime, only, that is, a one-third part of the real estate of said Susie E. Hudson, or the part so falling to her for life." (Italics ours.)

At the time the will was executed, and also at the death of the testator, James Bullock, his daughter Susie had then a living husband. This husband died about two years after the testator's death. Susie is still living and unmarried and is sixty-six years old.

It will be observed from the foregoing excerpt that there were two possible life estates created: One life estate was to Susie Hudson, and, if her husband survived her, another life estate to him, with the remainder over to the bodily heirs of Susie at the death of the last life tenant. The rule is familiar that a remainder must have some precedent particular estate to support it. In 21 C. J. page 990, it is said: "Any number of particular estates, each less than the fee, may precede the remainder, in which case each estate in the series will be a remainder to all the estates which precede it, and a particular estate to all which follow." By this will the remainder was to the bodily heirs. Two possible particular estates preceded the remainder: one to the daughter Susie for her natural life; the other, for his natural life, to a husband surviving her.

The question for decision here is whether "husband" in the sentence, "except I especially will and bequeath to her husband should she leave a husband surviving her," is restricted to the husband which she had at the time the will was made and when the testator died, or whether it may include a second surviving husband whom she may marry after the death of her first husband.

It is the contention of the plaintiff that these words must be construed as referring solely to the first husband, while

defendant maintains they should be construed as meaning any husband that might survive her. The paramount rule in the construction of a will is to ascertain from the instrument in its entirety the intention of the testator; and, if that intent is not prohibited by law, it is the duty of the courts to give effect thereto. All rules or canons of construction are but aids in arriving at the intention, and they must never prevail as against that intention when it is clear or manifest. *Bacon v. Nichols,* 47 Colo. 31, 105 Pac. 1082; *Miller v. Weston,* 25 Colo. App. 231, 246, 138 Pac. 424; 28 R. C. L., p. 211, §§ 173, 174, 175.

Ordinarily "wife" or "husband," in a will, means the person who at the time of its execution, or at the death of the testator, then sustains the relation of "wife" or "husband" to the one named. The word "widow" or "widower" is said to be of wider import than "wife" or "husband." It involves no fact in existence at the date of the will, and the relation is not created until the death of the one named, and the person sustaining that relation is to be ascertained as of the time of the death of the testator, which gives rise to, or creates, the relation.

*Meeker v. Draffen,* 201 N. Y. 205, 94 N. E. 626, 33 L. R. A. (N. S.) 816, Ann. Cas. 1912A, 930, relied upon by both parties, is authority for neither. Indirectly, it may tend to uphold defendant's contention in that the opinion cites with approval *Schettler v. Smith,* 41 N. Y. 328, which is, in one statement therein, in harmony with defendant's claim here. But, in this Meeker Case "widow," not "wife," was the word that led the court to say that, "Such wife as may survive the person named as the husband was included therein." The court also said that a gift or devise to the wife of a designated husband is usually restricted to the wife living at the death of the testator, and does not include one whom he may subsequently marry. The Meeker Case cites: *Van Brunt v. Van Brunt,* 111 N. Y. 178, 19 N. E. 60; *Van Syckel v. Van Syckel,* 51 N. J. Eq. 194, 26 Atl. 156; *Schettler v. Smith,* 41 N. Y. 328; *Swallow v. Swallow's Adm'r.,* 27 N. J. Eq. 278.

Plaintiff says the Van Brunt Case is practically on all fours with the instant case. We think not. The will there considered contained this language: "If any of my children should die without issue, or without leaving a husband or wife him or her surviving." The contention was, this meant a subsequent husband or wife, as well as those then living. The court, recognizing that the use of the indefinite article in such connection, while not necessarily, yet usually, means any wife or husband, nevertheless, restricted the words to the wives and husbands then living. This ruling was made, however, because the court said that in an earlier part of the will the words "husband" and "wife", as first used, would naturally and ordinarily refer to a husband and wife living at the death of the testatrix, and this meaning the court said should not be surrendered unless the language quoted clearly and unmistakably pointed to a different meaning and established a different intention. The court said that this language did not necessarily do so, and thus proceeded: "Seven such husbands and wives were in fact living when the will was made, and when the testatrix died, and it was for them that the devise was made; and if the testatrix had intended a formal provision for their possible successors after her death, we should expect to find some definite disclosure of that purpose, and not one dependent upon a mere inference from a form of expression which might very well not have been so intended. For the use of the indefinite article in the phrase, 'a husband or wife,' was occasioned by the existence of several such persons answering the description, to any one of whom the provision was intended to apply."

It was for that reason that the phrase was limited to the living, and not extended to future, husbands and wives. The court then distinguishes between the case under consideration and the Schettler Case, *supra*. The court also said that the mere fact that there was one unmarried son of the testatrix should not effect a different construction, because the trust devise in question was created at once for all the children and by a common description and expres-

sion. It is evident from a careful reading of the opinion that had it not been that the use of the indefinite article was thus occasioned by other language of the will referred to, the court would probably have given to the indefinite article the ordinary meaning of including any husband or wife. It should also be added that the court probably was influenced by the fact that, if the will was construed as including subsequent husbands and wives, the trust devise would have been invalid, in that the power of alienation would be unlawfully suspended.

All of these cases, however, and authorities generally, say that accompanying, or in connection with, the word "wife" or "husband", there may be explanatory words or phrases which enlarge or expand the meaning of these words and make them include, not merely the wife or husband then living, but a subsequent or second wife or husband. In the clause of the will referring to the life estate that passed, upon the contingency named, to the wife of the deceased son, the language used was, "except that it is my will that if his wife survive him, if he leaves his wife surviving him", while in the clause of the will for a possible second life estate, after the termination of the life estate to his daughter, the testator used these words: "except I especially will and bequeath to her husband, *should she leave a husband surviving her,* the one-third part," etc. It is to be observed that the testator does not stop with the word "husband." Had he done so, then, under the general rule, the husband then living was meant. But he explicitly uses, in connection with "her husband," the words, "should she leave a husband surviving her," thereby, as we think, explaining that the devise is to any husband that survives her, which could be only the "widower" who could be ascertained only at her death. The indefinite article "a" means one or any, and in this case it would seem to mean "any." Qualifying the word "husband," the natural meaning is, that if the testator's daughter Susie died before her husband, that is, *any* husband she left surviving her, he was to receive a life estate in one-third of the property that was

devised to her.   In the case of the similar estate to the husband, the language employed in the same clause was not indefinite but was, "his wife surviving," while in the case of the life estate provided for the husband of the daughter it was, "should she leave a husband surviving her."

The use of different words in a will applying to the same subject-matter, indicates that the testator had in view different results.   40 Cyc. 1402.   While it is true that ordinarily "wife or husband" used alone refers to "wife or husband" living at the time of the testator's death, yet where there are other words, as in this will, which naturally expand or enlarge the use of these words so as to make them equivalent to "widow or widower," the intent of the testator should be given effect.   We are of opinion that this devise for the benefit of the husband of the testator's daughter, Susie Hudson, was intended to include "any husband" she had at her death, and was not restricted to her husband who was living at the time of the death of the testator.

Judgment reversed, and cause remanded with instructions to vacate the same, and enter judgment for defendant on his counterclaim, as prayed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.