No. 19,930.

MAY HEINNEMAN, ET AL., *v.* THE COLORADO COLLEGE, ET AL.

(374 P. [2d] 695)

Decided September 17, 1962. Rehearing denied October 8, 1962.

516

Mr. FRED S. CALDWELL, Mr. JOHN R. GRIFFITH, for plaintiffs in error May Heinneman and Georgina Williams.

Mr. STANLEY R. JOHNSON, for plaintiff in error Cordelia Hanning.

Messrs. HANEY & HOWBERT, Mr. BYRON L. AKERS, JR., for defendant in error The Colorado College.

Mr. BENJAMIN GRIFFTH, for defendant in error The Colorado National Bank of Denver.

*In Department.*

Opinion by MR. JUSTICE MOORE.

The Colorado National Bank, hereinafter referred to

as the executor, filed a petition for construction of certain provisions of the will of Stella G. Chambers, deceased. Plaintiffs in error, to whom we will refer as "the cousins," were beneficiaries named by said deceased in paragraph III of her will which reads as follows: "I give and bequeath one hundred and eight (108) shares of the corporate stock I may own at the time of my death in the American Telephone and Telegraph Company, share and share alike, to be divided among my first cousins, May Heinneman, of Hollywood, California; Georgina Williams, of Hollywood, California, and Cordelia Hanning, of Denver, Colorado."

Colorado College, hereinafter referred to as "the College" was named residuary legatee in the will of said deceased.

It was alleged in the petition filed by the executor that Stella G. Chambers died December 15, 1959; that the will executed by her on January 15, 1958, was admitted to probate February 8, 1960; and that letters testamentary were issued to the executor.

It was further alleged that: "On the date of the execution of said Will on January 15, 1958, decedent owned 100 shares of the common stock of American Telephone and Telegraph Company. Petitioner is informed and believes, and upon information and belief alleges the fact to be that at said date decedent had acquired or was in the process of acquiring $1200.00 in debentures of said corporation which were convertible into corporate stock, and on the 17th day of February, 1959, she acquired through conversion of said debentures, 12 additional shares of the corporation stock of said Company.

"4. About one year after the execution of said Will, it was stated in the public press that said corporation was contemplating a split of their stock at the ratio of three for one, and which split became a matter of record of said corporation on or about April, 1959. On June 9, 1959, decedent had as a result of said three for one split a total of 336 shares in said Corporation, and at the time

of decedent's death she was the owner of 336 shares of common stock in said Corporation.

"5. Petitioner is informed and believes, and upon such information and belief alleges that at the date of the execution of said Will the decedent had no information or knowledge, prospectively or otherwise, that said corporation was contemplating or had in mind any plan for a three for one split of its corporate stock. Petitioner is uncertain whether the provisions of Paragraph III above quoted, in the light of the circumstances existing when said Will was made, should be construed as limiting the beneficiaries therein named to the 108 shares of said stock as now existing, or whether the decedent intended they should have the equivalent of said stock as it existed at the time the Will was executed, viz. 324 shares. In short, to whom does the split stock go, to said beneficiaries or to the residuary legatee?

"6. In view of the allegations hereinabove set out, the Executor desires the Court to construe said Will and determine the exact number of shares which the Executor should deliver to said specific legatees and the exact number of shares they should deliver to the residuary legatee at the time the estate is closed."

The College filed an answer to the petition for Construction of the Will and alleged that Paragraph III states in clear unambiguous language the intent of the testatrix that 108 shares of the American Telephone and Telegraph Company which were owned by the testatrix at the time of her death is the stock that she intended to bequeath to the legatees named in Paragraph III of said Will; that no word or part of said Paragraph III is in conflict with any other word or part of said paragraph or with any other word or part of said Will, and that no evidence whatever, except the Will itself, is admissible to show the intent of the testatrix. The College further alleged that the bequest contained in said Paragraph III of said Will is not a specific bequest of 108 shares of the capital stock of the Company which Testatrix owned

at the time of her death, and as such, all dividends or other earnings on account of such stock from the date of death of said testatrix until said 108 shares of said stock owned by said testatrix at the date of her death is distributed to the legatees named in said Paragraph III of said Will is and will be the property of the residuary estate of said deceased.

The cousins filed an answer to the petition of the executor in which they admitted all of the statements of fact alleged in said petition. They alleged that it was the intention of Stella G. Chambers, the testatrix, at the time she made her will, to bequeath to them a property interest in the corporate estate of the Company, which was then represented by 108 shares of the corporate stock of that Company, having a par value of $100.00 per share, and which property interest, because of the subsequent 3 for 1 stock split, was represented at the time of testatrix' death, and is now represented by 324 shares of the corporate stock of that Company at $33⅓ per share par value. Further they alleged that title to the 324 shares of the Company here in question, passed to them upon the death of the testatrix, and they are entitled to said shares of stock, together with all dividends accruing thereon after the death of the testatrix.

The trial court adjudged that the shares of stock to which the cousins were entitled under the will were those owned by the deceased at the time of her death in the form in which they were then found, namely 108 shares of stock of the par value of 33⅓ dollars per share which reduction in par value resulted from the 3 for 1 stock split which was made by the company following execution of the will by the deceased. The trial court further ruled that the bequest of said stock to the cousins was a specific bequest by reason of which earnings thereon belonged to them from the date of testatrix' death.

The cousins are here on writ of error to review that

portion of the judgment of the trial court which denied them ownership of 324 shares of the stock in dispute.

 The trial court correctly held that the gift here involved was a specific, as distinguished from a general bequest. For a discussion of the applicable rules governing classification of bequests as "specific" or "general" we direct attention to *Nusly v. Curtis*, 36 Colo. 464, 85 Pac. 846; *Bond v. Evans*, 92 Colo. 1, 17 P. (2d) 311; and *Breymaier v. Davidson*, 149 Colo. 218, 368 P. (2d) 965.

We are not unmindful of the decisions of this court, and those in other jurisdictions, in which it is held that a will speaks as of the date of death of the testator; that an unambiguous will may not be explained by extrinsic evidence so as to dispute its plain meaning; and that courts will not re-write a will or insert words not placed therein by the testator.

Under the record as made before the trial court the allegations of fact contained in the executor's petition stand admitted. The position of the College is that the intent of the testatrix is apparent from the will itself and nothing other than that instrument may be received to determine the testatrix' intent.

 It is the duty of the court to determine the actual intent of the testatrix and having determined that intent, then to see that it is carried out, and that the beneficiaries named receive that which the donor intended they should receive. The court should not so construe the will here involved as to deprive a beneficiary of a value which the testatrix intended to be given, and which construction would result in the residuary legatee receiving an asset which the testatrix obviously did not intend that it should receive.

At the time of making her will testatrix unquestionably intended to dispose of an interest in a corporation represented by 108 shares of stock having a par value of $100.00 per share. By unilateral action of the company, shortly before her death, the stock split was accomplished, without participating action on the part of

the testatrix. The value originally represented by 108 shares of stock was represented by 324 shares at the time of the death of testatrix.

It is perfectly apparent that the deceased did not intend that the bequest to the cousins could be reduced two-thirds in value by action of the directors of the American Telephone and Telegraph Company. It is likewise perfectly apparent that the testatrix did not intend that two-thirds of that which she specifically gave to the cousins should be withdrawn from them and be bestowed upon the residuary legatee. From *Williams v. Fundingsland,* 74 Colo. 315, 221 Pac. 1084, we quote:

"The paramount rule in the construction of a will is to ascertain from the instrument in its entirety the intention of the testator; and if that intent is not prohibited by law, it is the duty of the courts to give effect thereto. All rules of canons of construction are but aids in arriving at the intention, and they must never prevail as against that intention when it is clear or manifest. *Bacon v. Nichols,* 47 Colo. 31, 105 Pac. 1082; *Miller v. Weston,* 25 Colo. App. 231, 246, 138 Pac. 424; 28 R.C.L., p. 211, §§173, 174, 175."

*Morrow v. Detroit Trust Co.,* 330 Mich. 635, 48 N.W. (2d) 136, was a case in which certain stocks in a Lumber Company had been bequeathed. The par value at the time the will was made was $100.00. Subsequent thereto and before the death of the testator the stock had been reduced to $50.00 par value, and that court said, inter alia:

"The only question in this case is the construction to be placed on article 9 (b) of the will. In construing the above article we have in mind that a will is not operative until the death of the maker, but speaks the intentions as of the time of its execution, * * * and that the construction of a will should not be varied by events subsequent to its execution, * * * .

"In the case at bar the bequest in trust was of stock of a par value of $25,000 which represented 250 shares

of stock of the Detroit Lumber Company. No pecuniary gift was intended. The provision for the contingency of ademption indicates that testator intended to make a specific bequest in trust. In our opinion testator intended to set up a trust for his sister of 250 shares of stock in the Detroit Lumber Company. As a specific bequest, the will speaks as of the time of its execution. The subsequent action of reducing the par value of the stock did not affect the bequest. Under the reduced par value of the stock plaintiff will still receive the earnings on approximately 10 per cent of her brother's estate, which represents the amount intended by testator when he executed his will."

The rule that a will speaks as of the time of death of the testator, relates to the operation of the instrument and not to its construction. *Lee v. Foley,* 224 Miss. 684, 80 So. (2d) 765; 57 Am. Jur. 795, 796; 95 C.J.S. 894.

A concise statement of the law as it applies to the situation involved in the case at bar together with an example thereof is found in Restatement of the Law of Property, Future Interests, Parts 3 and 4 in Section 244 at pages 1228 and 1229 as follows:

"When a will describes the subject matter of the gift as particular shares, bonds or securities, and between the execution and effective date of the will, these shares, bonds or securities are exchanged as an incident to the reorganization or consolidation of the issuing corporation, or other like occurrence, then such gift, normally, is construed to pass what was originally given despite its new form, and the event subsequent to the execution of the will neither destroys nor diminishes the inclusiveness of such gift.

" * * * A makes another effective will devising '1200 of my shares in the B Corporation to C in trust for the benefit of D for life, thereafter to D's children absolutely.' B Corporation exchanges these shares in the ratio of 1 to 5. A thus receives 6,000 shares. A dies.

The intended corpus of the trust is the 6,000 shares in the B Corporation."

In 7 A.L.R. (2d), we find the following pertinent language supported by numerous authorities there annotated:

"The rule is definitely established, at least in the United States, that a split-up, or reduction of the par value, of shares of stock which were the subject of a bequest does not result in an ademption of the bequest, unless a contrary intention on the part of the testator appears, the split-up not amounting to an extinguishment of the existence of the subject of the gift, and, so, the legatee being entitled to the increased number of shares which replace those bequeathed."

Under the record as made we conclude that it was the intention of the testatrix to bequeath to her cousins the full value of the asset represented by 108 shares of A. T. and T. stock upon the date the will was executed, and that the split in the stock which thereafter occurred does not diminish the value of such bequest. That the cousins are entitled to 324 shares of the stock which issued following the split stock operation, together with the earnings thereof accruing from and after the death of testatrix.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment in accordance with the views herein expressed.

Mr. Justice Hall and Mr. Justice McWilliams concur.