The **COLORADO SPRINGS NATIONAL BANK** and **Daisy D. Johnson, Executors of the Estate of R. E. Johnson, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 8875.**

United States District Court
D. Colorado.

June 29, 1966.

Grant, Shafroth, Toll & McHendrie, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., for the District of Colorado, David I. Shedroff, Asst. U. S. Atty., Denver, Colo., Richard M. Roberts, Acting Asst. Atty.

Gen., Jerome Fink and Lawrence E. Doxsee, Attys., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Judge.

The plaintiffs herein seek refund of $306,477.78 in estate tax, together with $40,036.40 in interest, which amount was paid by the estate of R. E. Johnson. The testator died July 25, 1960. Daisy D. Johnson, the widow of R. E. Johnson, is co-executor, together with The Colorado Springs National Bank, of his estate. A marital deduction had been claimed by the estate and following disallowance of this a deficiency assessment was made by the Government. In essence, the plaintiffs contend that the estate is entitled to a marital deduction either because the interest which passed in the will to Daisy Johnson was a fee interest or, in the alternative, because the will granted to her a power of appointment within the terms of the applicable federal statute. A further alternative claim of plaintiffs seeks a refund in the amount of $405,-699.80, and this is based on asserted charitable deductions if the marital deduction is denied.

The plaintiffs have moved for summary judgment on their first claim and the defendant has moved for summary judgment on both claims. Since there is no dispute as to material fact and inasmuch as the matter has been fully briefed and argued, it now stands submitted.

The testamentary clause which must be considered and construed is Article III of the will, which gives to Daisy D. Johnson and The Colorado Springs National Bank "all of the rest, residue and remainder of my estate, real, personal and mixed, * * *." It goes on to authorize them to sell all real property within a period of two years and to retain real estate loans, and recommends reinvestment of proceeds in first mortgages on real estate in El Paso County, Colorado, or in Government bonds, the net income to be paid to Daisy D. Johnson during her natural life. The crucial provision, Article III, paragraph (c), provides as follows:

"If at any time during the life of my said wife, the net income of the Trust herein created shall, in the judgment of the Trustees, or in the judgment of either Trustee, be insufficient for the proper and generous support and maintenance of my said wife, the said Trustees shall have full and unlimited authority to apply and expend for the said purposes, in addition to the net income available, such part of the principal, or corpus, of the Trust Estate as in their judgment shall be advisable, and their decision, or decisions, or the decision of either of them, to so invade the said corpus, shall not be questioned by anyone. If, at any time during the life of my said wife, there should be a difference of opinion between my wife and the other Trustee as to the amount of corpus that may be used for the benefit of my said wife, I direct that the wishes of my wife shall, in each and every instance, prevail over that of the other Trustee."

Article III, paragraph (g), makes provision for remainders following the death of Daisy D. Johnson, and provides:

"Upon the death of my wife * * * the surviving Trustee may forthwith liquidate a substantial portion of the assets of said Trust Estate, and shall then pay over and distribute in cash to each of the following persons * * * the amounts hereinafter set after their respective names, * * * and distribute to the following-named organizations the sums set opposite their respective names * * * and to pay and distribute to each of the following persons, if then living * * * [or their heirs and assigns] the amounts set opposite their respective names * * * and all of the rest, residue and remainder of said Trust Estate then remaining in the hands of said Trustee shall be held * * * for the uses and purposes of the organizations hereinafter named, with the

directions and authorization that the Trustee shall distribute each year the net income of said Fund and ten per cent (10%) of the corpus of said Fund, to the end that said Trust Estate will be distributed within a period of Ten (10) years from the date of the creation of same * * *"

The argument in support of plaintiffs' first claim for relief is that under Colorado law and the peculiar terms of the will, the interest given to the surviving wife was not a life estate but rather by reason of her right to indiscriminately invade corpus was in law a fee simple interest; that the estate is thereby entitled to a marital deduction. The basis for this contention is Section 2056(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 2056(a).

Under the mentioned section of the Code,[1] the marital deduction is determined by deducting from the gross estate the value of any interest which passes from the decedent to his surviving spouse. The question is then whether under Colorado law the corpus has passed to the surviving spouse.

A series of decisions of the Supreme Court of Colorado have enunciated and expounded the doctrine which is commonly called the "McLaughlin rule," which is here contended to apply. McLaughlin v. Collins, 109 Colo. 377, 125 P.2d 633 (1942); Davey v. Weber, 133 Colo. 365, 295 P.2d 688 (1956); In Re Zell's Estate, 142 Colo. 343, 351 P.2d 272 (1960); First National Bank of Denver v. People, Colo., 405 P.2d 730 (1965). The facts in the several cases were not too different from those at bar. All involved the similar issue of whether the words of the will were such that the interest created was to be regarded as a fee notwithstanding that it purported to create a life estate. The criteria which are set forth in these opinions must be examined in order to reach a conclusion in the case at bar.

The definitive case is McLaughlin v. Collins, supra. The will provided that the surviving spouse might dispose of all personalty as she wished and might also "sell, encumber, transfer or dispose of the real estate for adequate consideration." It then went on to create remainder interests providing for a life estate to testator's son with remainders to his nephews. The holding was that this granted to the surviving spouse an absolute gift of the real estate. The court distinguished its former decision of Blatt v. Blatt, 79 Colo. 57, 243 P. 1009, 57 A.L.R. 221 (1926), wherein the spouse and the executor had to concur in a decision to sell real estate. In *McLaughlin* the decision was solely that of the spouse. Thus, the test which emerges from McLaughlin is whether the will authorizes the spouse to sell and use all of the property as she desires and thus authorizes her to destroy the remainder interests.

In Davey v. Weber, supra, the court followed the McLaughlin ruling. The will in that case granted to the wife "the privilege of disposing of any part thereof (real and personel for and during her natural life) at any time she may deem it necessary for her welfare." The court noted that the language placed in the spouse "the entire control of when, to whom, and for what purpose * * * she might dispose of any of the property," and held that "Such power is wholly inconsistent with the restrictions and limitations of a life tenancy and vests absolute fee in devisee."

In *Zell*, supra, the wife was granted the residue of the estate for life "with the full right and authority to sell, transfer and convey any portion or the whole of this bequest if she in her sole discretion

---

1. This provision declares:

"(a) Allowance of Marital Deduction.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

determines that she is at any time or times in need thereof. * * * " Other provisions related to remainders in the event that the wife should die "before she has disposed of this bequest." The court's conclusion was that "The wording of the Zell will, as far as the rights of the remaindermen are concerned, is in fact no different than that concerning the rights given to the remaindermen in McLaughlin."

An opposite result[2] was reached in the more recent decision of the court in *First National Bank of Denver,* supra. In that case the will granted the widow the right to demand in writing such sums as she wished: "It is my intention that no limitation be placed on my wife as to either the amount of or reasons for such invasion of principal." This, however, applied only to one share of the estate. The remaining share, consisting of ranch property, was placed under the management of the testator's brothers and outside the grasp of both the executor-trustee and the widow. The trial court's ruling that the McLaughlin rule applied was reversed. The court observed that the McLaughlin rule "should not be extended to include trust assets of the kind involved in this case," and further pointed out that the surviving spouse "could not notify the Co-executors that she desired to invade the trust corpus in its entirety even if this was her desire." Since, therefore, the widow did not have unrestricted power to exhaust the corpus at will, it was held that she did not have a fee.

As previously noted, the will here in question created a trust with net income to the wife during her life and further provided that if in the judgment of the Trustees, it should be "insufficient for the proper and generous support and maintenance of my said wife, the trustees shall have full and unlimited authority to apply and spend for the said purposes" such part of the corpus as in their judgment shall be advisable. It further states that the judgment of either shall not be questioned and that in case of conflict, the wishes of the wife shall prevail. Specific provisions disposing of the residue are contained in Clause (g).

Whether the will created a true trust is not the controlling consideration. The government maintains that this is the important criterion, but we regard it as a superficial basis. We must instead look to the entire instrument and determine whether it in truth granted an unrestricted power to invade corpus for any purpose. We must conclude that the language of paragraph III (c), read and considered clause by clause and in its entirety, does not grant such unlimited power. The entire paragraph is geared to a standard of "proper and generous support and maintenance." The "unlimited" authority to invade corpus is "for the said purposes" if the net income appears insufficient. Thus the "unlimited" authority is not unlimited at all. The difficulty is that the term "support and maintenance" is not equivalent to the right to invade and spend in her sole discretion. She could not, for example, disagree with the charitable and specific gifts set forth in the testator's will and create a new design for the disposition of the estate. Furthermore, very large gifts to charities of her own choosing, which gifts would thwart the will of the testator, would not be permissible. Such was not within the contemplation of the testator. Therefore, she is empowered to invade corpus only for her personal support and maintenance, and although this would allow her to live extravagantly and perhaps ultimately use up the corpus, this is not the kind of unlimited authority which was found in McLaughlin and the other cases.

Nor does the other important provision of paragraph III (c), that which provides that she can overrule her co-executor-trustee, change the result. This is still within the framework of support and maintenance. It would not be permissible to read this as an independent grant of authority to invade the corpus. The

2. Under substantially different facts.

testator did not express opposing wishes within the same paragraph. This reading is in accord generally with paragraph III (g), which provides in specific detail for disposition of the corpus of the estate after the death of testator's wife. The total will, including paragraph III (c), contemplated that a substantial corpus would remain after the wife's death.

In summary, then, it was the intention of testator to provide handsomely for his surviving wife. On the other hand, it was not his intention that she could invade corpus for *any* purpose. She did not, therefore, have the absolute power which is contemplated by the McLaughlin line of cases. The McLaughlin rule does not apply, and the interest given is not a fee.

■ The further contention of plaintiffs that the estate is entitled to a marital deduction under Section 2056(b) (5),[3] the life estate-power of appointment section, remains to be determined. This section provides that an interest passes to a surviving spouse where there is a power in the surviving spouse to appoint the entire interest.[4] A further proviso is that it shall be exercisable in all events. The treasury regulation is helpful in construing the provision. This regulation provides:

> "Further, a power is not 'exercisable in all events' if it may be exercised for a limited purpose only. For example, a power which is not exercisable in the event of the spouse's remarriage is not

exercisable in all events. *Likewise, if there are any restrictions*, either by the terms of the instrument or under applicable local law, *on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events.* In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will)." 26 C.F.R. Sec. 20.2056(b)–5(g) (3). [Emphasis supplied]

Inasmuch as the power in Mrs. Johnson to invade the corpus was not unqualified but was limited to support and maintenance, it follows that it was not exercisable in all events. It is not sufficient to qualify the interest for the marital deduction, and this alternative contention must also be rejected.

■■ The final question is whether the estate is entitled to a *charitable* deduction arising from the specific and percentage remainder provisions. Section 2055(a), which authorizes such deductions, does not provide much help in

---

3. Title 26 U.S.C. § 2056(b) (5).

4. The section in its entirety reads as follows:

"(5) *Life estate with power of appointment in surviving spouse.*—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no

power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other then the surviving spouse. This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

the solution of the present problem whether the charitable gifts are sufficiently defined by the will to be deductible at the present time. It merely provides for the deduction of all bequests "for the use of any corporation * * * for religious, charitable, scientific or educational purposes * * *." It also makes provision for disclaimer of a power prior to the date prescribed for the filing of a tax return. No such disclaimer was here filed and so the sole issue is whether the estate is entitled to a charitable deduction for these bequests or any of them. The pertinent regulations do serve to narrow the issue. They provide:

"(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest * * * Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible.

"(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death, and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to be highly improbable at the time of the decedent's death, the deduction is allowable * * *" 26 C.F.R. Sec. 20.-2055–2

Thus, the questions are: first, whether the charitable interests are presently ascertainable and hence severable from the noncharitable interest; or, secondly, whether the possibility that the charitable transfer will not become effective is so remote as to be negligible.

The position of the Government is that the interests of the charitable remaindermen are not ascertainable because of the extent of the wife's power under the will to invade corpus for support and maintenance. It relies on the decisions of the Supreme Court in Merchants Nat'l Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943) and Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949). Plaintiffs, on the other hand, argue that the allowance of charitable deductions is a necessary alternative to a holding that Mrs. Johnson does not have a fee pursuant to the McLaughlin rule; that the power is necessarily limited to support and maintenance at the level which existed at her husband's death and that this results in the charitable gifts being ascertainable. Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929).

Logical consistency does not demand that the deductions be allowed by reason of the disallowance of the marital deduction. The two sections of the statute express two different policies which must be evaluated according to the standards which belong to each. The qualifying tests are not related. The gifts may not be ascertainable by reason of the extensive power of the widow to invade corpus for support and maintenance, but it does not follow, as we have already shown, that she is thereby entitled to a marital deduction.

In Ithaca Trust Co. v. United States, supra, the wife was limited in her power to invade corpus. The testamentary clause in question permitted the surviving spouse, during her lifetime, to take from the residual estate any sum "that may be necessary to suitably maintain her in as much comfort as she now

enjoys." The court in that case readily held that the clause established a sufficiently fixed standard for evaluating the charitable remainder interests. No such fixed standard was present in *Merchants National Bank,* supra, where the clause in question provided in part as follows:

"[The trustee may invade corpus] at such time or times as * * * [it] shall in its sole discretion deem wise and proper for the comfort, support, maintenance, and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from principal * * * said Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under the trust." (Quoted at 64 S.Ct. 110)

The court in that case held the clause to be too vague, stressing the fact that the executor was commanded to consider the widow's happiness. The court also pointed out that the extent to which the principal might be used "was not restricted to a fixed standard based on the widow's prior way of life."

In construing the testamentary clause here in question the entire instrument must, of course, be given effect. See Heinneman v. Colorado College, 150 Colo. 515, 374 P.2d 695. The standard provided by the clause is "generous and proper support and maintenance." It also speaks in terms of the wife's "wishes," and invasion for her "use" and "benefit." These terms are not to be ignored, although undue emphasis must not be placed on any single one. In light of the entire clause, it is difficult to find an intent on the part of the testator to limit his wife's power to invade corpus to that standard of living she previously enjoyed. The most that can be said is that she could not dispose of the corpus indiscriminately. Thus, the clause here in question would appear to be governed by *Merchants National Bank,* supra, and the cases which follow it in that the testator seemingly intended for his wife to be able to utilize whatever sums she deemed necessary for her own support and maintenance, at whatever economic level she might choose.

This is, however, not a complete answer to the issue posed by defendant's motion for summary judgment. It is conceded by the Government that, under the applicable regulations, supra, a factual issue as to the remoteness of the possibility of invasion of corpus might here be presented. There may be factual material available which could aid in this determination. It was unquestionably the intent of the testator to provide bequests to many charitable remaindermen, and as it was undoubtedly his assumption that such bequests would be honored, it thus becomes even important to ascertain whether the possibility of invasion is "so remote as to be negligible."

We do not now decide whether identical treatment is appropriate for the bequests of specific sums and the bequests of percentage remainders.

For the above reasons, it is

Ordered, that defendant's motion for summary judgment regarding the first claim for relief be, and the same hereby is, granted. It is

Further ordered, that defendant's motion for summary judgment on the second claim for relief be, and the same hereby is, denied. Trial will proceed in the near future on the second claim.