No. 14,973.

McLaughlin et al. *v.* Collins, Executor, et al.

(125 P. [2d] 633)

Decided April 27, 1942.

Mr. Leon H. Snyder, Mr. Leonard Sutton, for plaintiffs in error.

Mr. Albert S. Frost, Mr. O. E. Collins, pro se, for defendant in error Collins; Messrs. Foard Brothers, for defendants in error McCormick and Hess.

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear in the same order as in the trial court and are hereinafter referred to as there, or for convenience plaintiffs in error are referred to as Harry and Dan, and defendants in error as Collins, Harriet, Josie, Ida, Catherine, Frank, Jack and Nettie, respectively, and Raymond McLaughlin, deceased, as McLaughlin.

This action involves the construction of the will of McLaughlin in the light of facts arising since his death. He had bequeathed all of his estate, either absolute or for life, to Harriet. Most of it remained in her hands at her death and was disposed of by her will. Harry who received $10.00 thereunder, and Dan, who received nothing, sought herein a decree awarding them the whole, jointly. Answers and replications followed and judgment was for the defendants. To review that judgment plaintiffs prosecute this writ.

McLaughlin had been three times married. Dan was his son by the first marriage and Harry by the second. His third was to Harriet (also called Hattie) and they had no children. These three were his sole heirs at law. Collins, a friend, was named executor in the will of Harriet and her beneficiary to the extent of $300. Josie and Ida, her sisters, each received $100 thereunder, Harry $10.00, Catherine, a friend, $200; and the sisters were made residuary legatees. Frank, Jack and Nettie were the children of George Lechner, nephew of McLaughlin.

The paragraph of McLaughlin's will here presented for construction reads: "I hereby give, devise and bequeath, all the rest, residue and remainder of my estate of which I may die seized or possessed, both real and personal, including all money in any bank or banks, stocks, notes, bonds, or other forms of securities, incomes, choses in action or any and all property of whatsoever nature belonging to or constituting a part of my

estate, or to which I may be entitled, to my beloved wife Hattie McLaughlin to be held and enjoyed by her during her life time, Provided however, that all personal property, money, securities, stocks, notes, bonds, incomes, choses in action and every kind of property constituting my personal estate may be used, enjoyed, sold or disposed of as she may wish, and that she may sell, encumber, transfer or dispose of the real estate for an adequate consideration, but should she die seized or possessed of the real estate of which I die seized or possessed, then it is my wish that said real estate descend to my son Harry McLaughlin to be used and enjoyed by him during his lifetime, without the power of grant or sale as to the same, and upon his death, it is my will that said real estate descend to and become the property of Frank Lechner, Jack Lechner and Nettie Lechner, share and share alike, the last three named persons being the children of my beloved Nephew George Lechner, to have and to hold the same in fee simple, to use, hold, enjoy, sell or dispose of as they the said devisees see fit." Harriet was appointed executor by the county court. She accepted the will and there has been no judicial construction of it. She took all the property, disposed of the personalty, spent the proceeds, sold the real estate to one Poulson for $3600, and received payments reducing this to $2386, of which she had on hand in cash at her death $258.20. She had executed a deed to Poulson which was undelivered. He has since completed his payments and received his deed, and the total proceeds of the sale (over and above what Harriet had collected and spent), i.e., $2644.20, is now in the hands of Collins as executor. All essential facts are covered by stipulation. The question here is, Does this sum pass under the will of Harriet or does it go to Harry and Dan as heirs at law of McLaughlin because of the alleged failure to bequeath the remainder?

The following dates are informative. McLaughlin died February 23, 1938; his will was admitted to probate

April 23, following; contract for sale of the real estate was executed by Harriet and Poulson January 3, 1939; decree of final settlement was entered in McLaughlin's estate January 16, 1940; and Harriet died a week later.

We fail to get from the briefs in this case, especially that of defendants in error, the assistance to which we are entitled. The reason is apparent and we state it because it discloses a common and apparently progressive vice which we thus hope to check. The question presented is simple. There are but 31 pages of abstract, and 52 pages of the brief of defendants in error. In that short space 227 decided cases and 26 texts are cited. It seems impossible that counsel could entertain the delusion that we would read these, but if so, they should be disabused of that hallucination. If in all the cases presented to this court the same method were followed and the seven judges should actually undertake such a task, and conscientiously discharge such a duty, we would do well to dispose of a dozen cases in the course of a year. The fault here criticised is on a par with that of citing no authorities when many are available.

It seems advisable here to begin with a little Hornbook law. It concerns the intention of the testator, and although it is briefly argued by counsel for defendants in error no Colorado case is cited thereunder. "The first rule in the interpretation of wills is that the intent of the testator governs. That intent must, if possible, be ascertained from the will itself and effectuated by the courts. If doubt exists resort may be had to certain recognized principles and rules of construction." *Bacon v. Kiteley,* 101 Colo. 559, 75 P. (2d) 590.

It is admitted that Harriet had full authority under her husband's will to use and dispose of the personal property and its proceeds, and did so. It is gone and we have no concern with it. As to the real estate it is pointed out that she took only a life estate with power of sale, but that such sale was limited to "an adequate

consideration" and no authority was given to dispose of the proceeds. Let us see.

For clarity we may thus condense and divide this disputed paragraph of the will: (a) I give the rest of my estate, real and personal, to my wife Hattie (Harriet), to be held and enjoyed by her during her lifetime. (b) The personal property may be used by her and disposed of as she may wish. (c) She may sell, encumber, or dispose of the real estate "for an adequate consideration." (d) Should she die possessed of any of said real estate a life estate therein shall pass to Harry "without the power of grant or sale" and on his death the fee shall pass to Frank, Jack, and Nettie. It will thus be observed that by (a) both real and personal property passed by the same words. By (b) it is admitted that authority to dispose of personal property was granted, and that Harriet had a right to the unrestricted disposition of proceeds if sold. By (c) she was authorized to dispose of the real estate. Such disposition must of necessity have been "as she may wish," save as limited, if at all, by the phrase "for an adequate consideration." By (d) Harry could take only such *real estate* as Harriet died "seized and possessed" of, and "real estate" is twice repeated. Also Harry would take a different title than Harriet, for he was expressly forbidden to sell. It thus appears that Harriet was empowered to deal with real estate *and its proceeds* as she pleased unless restricted by the phrase "for an adequate consideration." Why the phrase if she were permitted to do as she pleased with proceeds? Several reasons suggest themselves. For instance, if swindled out of the real estate the will was notice to her grantee that good title could only be derived from her "for an adequate consideration," and a contrary disposition might be set aside at the instance of one interested or upon whom her support would devolve if she impoverished herself. But what reason do we find for an interpretation which authorizes her to dispose of proceeds? First, that real

and personal property pass by the same language, and such authority as to the personal property is admitted. Second, she may otherwise dispose of real estate as she pleases. Third, real estate (not money) of which she dies possessed can pass to Harry. Fourth, if Harry cannot convert real estate into money why should he be permitted to take money into which Harriet has converted it? Fifth, if Harry takes so does Dan, and we know McLaughlin intended otherwise.

Again, what one intended can sometimes best be determined by ascertaining what he did not intend. Here help is not wanting. We know McLaughlin did not intend to give anything to Dan, and we know he did not intend to give Harry anything which Harry could dispose of. Such was his lawful right, his reasons are not our concern. Furthermore, we know he intended that Harriet should have everything with sole power to dispose of all she saw fit save as she may have been limited in disposing of real estate by the phrase "for an adequate consideration," and that she might do as she pleased with proceeds of personal property. Why the testator denied one whom he so trusted the right to dispose of proceeds and passed those proceeds to one from whom he withheld the right to convert real real estate into proceeds it would be difficult to conjecture.

It thus seems clear that the interpretation contended for by plaintiffs would defeat the intent of McLaughlin in the following particulars: First. It would give Dan over $1,300 which his father certainly intended he should not have. Second. It would convert the power of sale expressly granted Harriet for something into nothing. Third. It would give Harry money with all the authority over it implied by possession, when his father only intended he should have real estate without right of alienation. We must therefore affirm this judgment unless forbidden by some positive statute or some decision which in this jurisdiction has become a rule of property, hence stare decisis. No one contends there is

such a statute and we think the authorities binding upon us are to the contrary.

██ ██ We first notice two applicable and universally recognized rules of construction. While testator's intent cannot be effectuated when it conflicts with a positive rule of law, or some cannon of interpretation so firmly established as to have become a fixed rule of law, this prohibition must not be forced and should be resorted to with caution if it overrides the real purpose of the testator. *Gregg v. Bailey*, 120 Me. 263, 266, 113 Atl. 397. "A devise without words of inheritance, but coupled with an unqualified power of disposal, either express or implied, conveys an absolute estate. This rule has been so frequently laid down by this court that it is no longer open to question. It is now recognized as a 'fixed cannon of interpretation.' " *Methodist Church v. Fairbanks*, 124 Me. 187, 126 Atl. 823. If we assume that the words "during her life" and "for an adequate consideration" evidenced McLaughlin's intent that should the real estate be sold by Harriet and any proceeds thereof remain in her hands at her death such proceeds should go to Harry, the foregoing rule defeats that intent and confirms Harriet's absolute title to said proceeds. In that case testator gave all his property, real and personal, with power to alienate, to his wife and daughter, but directed that if at their death any of it remained, "it shall be equally divided between the Methodist Episcopal Church of Monmouth, Maine, and the American Bible Society." This was held, under the rule, a gift absolute to wife and daughter. Here the gift of real estate was to Harriet, with power to alienate, with the provision that if at her death any of it remained (either real estate or proceeds we assume), that remainder should go to Harry. The rule would thus convert the bequest into a gift absolute to Harriet.

We come now to the Blatt case, decided by this court en banc seven years ago, opinion by Mr. Justice Campbell, all the justices concurring, cited by both parties here

and most strongly relied upon by plaintiffs. *Blatt v. Blatt,* 79 Colo. 57, 243 Pac. 1099. Several interesting and important questions were there involved, but the only one which now concerns us is the interpretation of a testamentary provision similar to that now before us. Blatt gave all his property to his wife "so long as she shall live * * * and I hereby authorize my said *wife and my executor* * * * whenever in the judgment of my said *wife and my executor,* they shall deem it advisable; to sell said real estate * * *. I also authorize my said wife, whenever it may become necessary for her maintenance and support, or whenever, in her judgment, it shall be advisable; to sell any part or all of my personal property * * *." It should be observed that as to the personal property Blatt's wife had sole authority to sell, but as to the real estate the power was jointly vested in the wife and the executor representing the estate. Note also that the Blatt will made no provision whatever for the remainder. Here Harriet's power of sale was absolute. In the Blatt case it was limited by the will of the executor. Here Harriet alone could, by selling, extinguish the remainder, otherwise it went to Harry, Frank, Jack, and Nettie. In the Blatt case it was wholly undisposed of. The only point determined in the Blatt case which could have any applicability here, was that, as to an undisposed of remainder in property out of which a life estate had been carved testator died intestate. The answer is that here Harriet was authorized to and did extinguish the remainder. Were it otherwise a careful examination of the Blatt case will demonstrate that the holding was dictum, since in that case there were neither children nor descendants of children. Mrs. Blatt would take the whole had there been no will. Had she not renounced under the will she would have taken one-half thereunder and the other half under the statute. An intestate remainder would go to the heirs and she was the sole heir. Hence when it was once determined that the law applicable was the law of Colo-

rado the whole estate would go to Mrs. Blatt under any theory.

It seems to us the inevitable conclusion must be that, either under recognized rules of construction in case of doubt, or under the rule which requires construction to conform to the intent of the testator, these plaintiffs take nothing.

The judgment is affirmed.

MR. JUSTICE HILLIARD not participating.