No. 20753.

The First National Bank of Denver, et al. *v.*
The People of the State of Colorado, and
Neil Tasher, Inheritance Tax Commissioner.
(405 P.2d 730)

Decided September 13, 1965.     Rehearing denied October 4, 1965.

Donaldson, Hoffman & Goldstein, Alan Armour, for plaintiffs in error.

Duke W. Dunbar, Attorney General, R. Robert Irwin, Jr., Assistant, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

We will refer to the plaintiffs in error as the executors or trustees, to defendants in error as the commissioner, and to the late Harry Weisbart as the testator or by name.

The executors are here by writ of error seeking reversal of that portion of a judgment of the trial court upholding the assessment of an inheritance tax on certain benefits received by the wife of the testator under the terms of his will. The assesssment was made on the basis that the testator, in creating a trust for the benefit of his wife, gave her unlimited power to invade the corpus thereof and thereby subjected the entire trust estate to taxation in all respects as though she had received absolute title to the property.

By cross assignment of error the commissioner seeks reversal of that portion of the judgment of the trial court by which a deduction from taxable assets, as an expense of administration, in the amount of $25,000 for fees to a certified public accountant was approved.

The ruling of the trial court to which the executors object was as follows:

"In the matter of the portion subject to invasion under Paragraph Five of the will, the objections are overruled. The Court is of the view that the rule has been established in Colorado that where the asset is such as is contained in Paragraph Five, with the unqualified right to invade, that the type of language contained therein enlarges the title to fee simple, and Paragraph Five conveys what is an absolute title."

The will executed by the testator divided his estate into two parts denominated "Share A" and "Share B." We are concerned in this action with the provisions of the will with relation to "Share A." The major portion of decedent's property consisted of varying interests in several companies engaged in the feeding and grazing of cattle and other related enterprises. These various interests were held jointly and equally with decedent's brothers, George Weisbart and Irvin Weisbart. Decedent's gross estate exceeded the sum of $2,000,000 and was and is of a highly complex and detailed nature.

The will was executed August 12, 1958. A codicil thereto was dated December 29, 1958. Pertinent provisions of the will are as follows:

"5. My Trustees shall pay all of the net income of Share A to my wife, if she survives me, as long as she shall live, making payments in installments not less frequently than quarter annually in as nearly equal installments as they deem practicable. In addition to the payment of income from this Share A, my Trustees shall pay to my wife such sums from principal as she may from time to time request in writing. It is my intention that no limitation be placed on my wife as to either the amount of or reasons for such invasion of principal.

"6. Upon my wife's death, my Trustees shall distribute the entire balance of principal and undistributed income, if any, of Share A in such manner and upon

such conditions as my wife shall, by specific reference to the within power, appoint by her Last Will. I hereby grant to my wife alone and in all events, the power to appoint by her Will, by specific reference to the within power, the entire balance of principal and undistributed income, if any, of Share A, free of this trust, to her estate or in favor of any other person or persons. It is my intention that my wife shall have the broadest possible power of appointment by Will as to the entire balance of principal and undistributed income, if any, in Share A at her death, (which power shall be exercisable by her alone and in all events).

"In the event I should survive my wife, or in the event that my said wife, having survived me, shall fail to exercise the power of appointment hereinabove conferred upon her, then Share A, or the entire balance of principal remaining in it, shall be added to and held and distributed in the same manner and on the same terms and conditions as Share B."

The codicil to the will made a specific bequest of personal property to the wife, a number of bequests to relatives, and a gift to charity. It also revoked Paragraph Fourth of the will and appointed George Weisbart, Irvin Weisbart and The First National Bank of Denver as joint executors and trustees. It also contained the following pertinent language:

"A substantial portion of my estate will or may consist of an interest or interests in the cattle and livestock business which is now being operated by myself and my two brothers, George Weisbart and Irvin Weisbart. It is my desire, and I so direct, that such business be continued after my death for such period as may be to the best interests of my estate and trust estate and the beneficiaries thereof. In this connection, however, because of the experience and familiarity with such business possessed by my two said brothers, it is my desire, and I so hereby direct, that they, acting jointly, or the survivor of them alone, shall have the sole management

of such business after my death, and shall be the sole judge of whether or not and for how long after my death such business shall be continued. Therefore, I direct that my corporate executor and trustee shall have no responsibility for, nor shall it have any liability to any person or persons arising in any manner from or on account of, the operation or management of such business, or for any debt of said business or any partner arising out of the conduct thereof, or the retention or sale or other disposition thereof, such matters resting with and to be the sole responsibility of my said brothers, or the survivor of them as aforesaid. * * *"

In the trial court the executors contended, as they do here, that under the above-quoted provisions of the will and codicil the widow's interest should be taxed only to the extent of the value of her life estate, and that the remainder interest should be taxed only upon exercise of the power of appointment or upon failure to exercise that power. They direct attention to C.R.S. '53, 138-4-12, which reads as follows:

"POWER OF APPOINTMENT UNEXERCISED. — Whenever any person, institution or corporation shall exercise a power of appointment derived from any disposition of property, such appointment when made, shall be deemed a taxable transfer in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person, institution, or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this article shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power

failing to exercise such power, taking effect at the time of such omission or failure."

They assert that this statute "fits this case specifically and exactly." They argue that: "Decedent obviously intended that his widow should have an income for life with a power of invasion limited by the practical nature of the assets. A reading of the will and codicil thereto and a consideration of the actual estate assets shows beyond question it was never intended that the widow consume the entire estate nor could she do so even if such was her desire."

The commissioner on the other hand argues that since under the declaration of trust the widow was given a life estate coupled with a power of appointment by will, and the "unlimited" power to invade the corpus during her lifetime, she had such dominion over the property as to be the fee owner and should pay tax on the whole just as though she had acquired the fee title to the property by direct bequest or devise.

The commissioner relies upon three decisions of this court, namely, *McLaughlin, et al. v. Collins, Executor, et al.,* 109 Colo. 377, 125 P.2d 633; *Davey v. Weber,* 133 Colo. 365, 295 P.2d 688; and *Estate of Zell v. Zell,* 142 Colo. 343, 351 P.2d 272. The rule announced in these cases may be stated as follows:

"An unqualified power given a life tenant to dispose of property devised by will enlarges the life estate to a fee simple title."

This rule was first adopted in *McLaughlin v. Collins, supra.* With reference to the so-called "McLaughlin rule" the attorney general admits that, "There is no question that this rule is the minority rule, but nevertheless, it is the Colorado rule."

Professor Lewis Simes in 50 Harvard Law Review, in an article beginning on page 749, at page 774, makes the following statement:

"While the weight of authority has always been that a power to appoint the fee does not enlarge a life estate

to a fee simple, there were four jurisdictions that held the other way; namely, Michigan, Tennessee, West Virginia and Virginia . . . . . . In the past 20 years, however, the law has changed in all four jurisdictions and they now accord with the weight of authority."

Thus Colorado would seem to stand alone in following the "McLaughlin rule." The three Colorado cases supporting it have a number of similar factual backgrounds, viz.:

(1) They all involved a direct devise of real property.

(2) They all involved disputes between a widow and contingent remaindermen.

(3) They all resulted in giving full effect to the intent of the testator as gathered from the will as a whole.

(4) They all involved a legal life estate created by express language of the will.

(5) None of them involved assets specifically made the corpus of trust.

(6) None of them involved any question arising under the statute authorizing collection of inheritance and successor taxes.

█ Under the factual situation disclosed by the record in the instant case, we hold that the trial court erred in applying the "McLaughlin rule." It should not be extended to include trust assets of the kind involved in this case.

In King on "Future Interests in Colorado" at page 78, we find the following pertinent language:

"A limitation of the type A to B for life, with power of sale in B, remainder to C, may vest the fee simple title in B, the intended life tenant. *Effect:* C will get nothing. *Comment:* The danger can be avoided by conveying to a trustee upon an active trust for the benefit of A for life, with remainder to C. Now it will not defeat the transferror's intent if the trustee is given a power of sale . . . . . ."

In *Scott on Trusts* (2d ed.) at Section 128.7, we find:

"* * * questions arise where no trust is created, but

property is given to a person for life with authority to use the income and authority to consume the principal ...... It is sometimes difficult to determine whether the donee was given an estate in fee or a life estate. At any rate a gift over *is not invalid where a trust is created even though the life beneficiary has an unrestricted power to call for or dispose of the principal."* (Emphasis supplied.)

The language of the codicil indicates that the testator realized the nature of his assets and knew that it would be absolutely essential to continue the business. The testator recognized the obvious fact that his brothers had intimate knowledge of the business to the exclusion of the corporate executor and specifically willed that any and all business decisions be made by them. The assets of the estate were not in a liquid state. *The widow obviously could not notify the Co-executors that she desired to invade the trust corpus in its entirety even if this was her desire.* Therefore, in fact, she had no unbridled power to invade corpus as paragraph 5 of the will might appear to give when read out of context with the other numerous paragraphs of the will and codicil.

Due to the complex nature of decedent's interests and the expert knowledge of his brothers, it appears quite clearly that testator intended that his wife have a life income with a power to invade limited by the true nature of his assets. The decedent also quite clearly assumed and intended that a substantial bulk of his estate would remain intact upon his wife's death. The testator vested his widow with a detailed power of appointment by will in order to effectuate this intent. Counsel for the executors are correct in their assertion that C.R.S. '53, 138-4-12, is applicable and controls the tax liability in the factual situations involved in this case. The trial court erred in holding to the contrary.

We now consider the cross error assigned by the attorney general to that portion of the trial court's judgment by which the accountant's fee of $25,000 was

approved as an expense of administration. The Inheritance Tax Deductions statute (C.R.S. '53, 138-4-16) provides in pertinent part that:

"Deductions allowed. — In determining the value of property transferred by will or intestate laws the following deductions and no others shall be allowed from the full and fair value of the property to which the transfer relates:

\* \* \*

"(5) Expenses of administration, reasonable attorney's fees and not including clerical expenses."

According to the report of the commissioner the gross value of the estate was $2,107,413.85. As already pointed out the estate assets were interwoven with the interests of others and the business activities of the testator were complex and upon his death necessarily required expert handling in the accounting field. We hold that the $25,000 fee the accountant asked was a proper item for inclusion as an expense of administration. As to this item the judgment is affirmed.

The judgment is reversed with reference to that portion of the judgment by which the trial court upheld the assessment questioned by the executors.

MR. JUSTICE MCWILLIAMS dissents.

MR. JUSTICE MCWILLIAMS dissenting:

I dissent from that portion of the majority opinion which holds that the widow's interest should be taxed only to the extent of the value of her life estate, because in my view the codicil neither directly nor by necessary implication negates what is to me a singularly clear proviso in the testator's will that "in addition to the payment of income from this share A, my Trustees shall pay to my wife such sums from principal as she may from time to time request in writing [and] it is my intention that no limitation be placed on my wife as to either the amount of or reasons for such invasion of the

110

principal." And, as the majority opinion states, in Colorado the "unqualified power given a life tenant to dispose of property devised by will enlarges the life estate to a fee simple title." See, for example, *McLaughlin v. Collins,* 109 Colo. 377, 125 P.2d 633.