No. 23057.

THE PEOPLE OF THE STATE OF COLORADO, AND NEIL TASHER,
INHERITANCE TAX COMMISSIONER OF THE STATE OF COLO-
RADO *v*. ESTATE OF KEN R. WHITE, DECEASED, DENVER
UNITED STATES NATIONAL BANK AS EXECUTOR.
(451 P.2d 737)

Decided March 10, 1969. Rehearing denied April 1, 1969.

Duke W. Dunbar, Attorney General, James R. Riley, Jr., Assistant, for plaintiffs in error.

Hindry, Erickson & Meyer, Robert D. Showalter, John P. Kreisheimer, Jay L. Gueck, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.*

THIS controversy involves the assessment of an inheritance tax on certain benefits received by the widow of Ken R. White under the provisions of a revocable inter vivos trust executed by him on March 1, 1957. He died on April 10, 1963, and thereafter the Denver United States National Bank became the sole trustee and was also named as executor of his estate.

The Inheritance Tax Commissioner assessed the tax which he found to be due, and filed his "Report of Appraisement and Assessment of Tax." The executor took exception to the report and filed its "Protest and Objections" thereto. On November 22, 1966, a hearing was held and evidence was taken. The final judgment of the trial court was entered on June 19, 1967, by which the court sustained the "Protest and Objections" filed by the executor. The Inheritance Tax Commissioner is here on writ of error seeking reversal.

The dispute involves the question as to whether, upon the death of White, an inheritance tax became due and payable on the sum of approximately $108,000. The executor argued, and the trial court held, that an inheritance tax was not collectible on this asset until the death of Georgia S. White who was the beneficiary in the life estate created by Ken R. White.

Section 1-3 of the trust indenture provided that upon the death of Ken R. White his widow Georgia S. White became vested with a life estate in and to a portion of the assets of the trust. Ken R. White provided in this section that if his wife survived him his trustee

"* * * shall withdraw from the principal of the trust estate sufficient property or cash so that the amount then

---

*Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

remaining in such trust shall equal in value the maximum marital deduction allowable * * *."

This trust is referred to as the marital trust. The assets comprising the marital trust are to be held by the trustee during the life of Georgia S. White, and Section 1-2-2 of the instrument provides that the trustee shall pay out and distribute the entire net income of the trust to Georgia S. White at least quarterly.

Section 3-3-1 of the trust provides that the corporate trustee shall have a limited, discretionary power to invade the corpus of the trust for the benefit of Georgia S. White,

"* * * in the event that her income from all sources of which my trustee shall have knowledge shall be insufficient to provide her with a standard of living commensurate with that which she now enjoys or in the event of any emergency justifying the same in the opinion of my trustees; * * *"

Section 1-4 and 1-4-1 of the trust, in legal effect, gives Georgia a power of appointment. In pertinent part these sections provide:

"Upon the death of the last survivor of myself and my wife, Georgia S. White, my trustees shall distribute the entire trust estate then remaining in their hands as follows:

"In the event that I am survived by my wife, Georgia S. White, then unto such person or persons (including the executor or administrator of my wife's estate), firm, partnership or corporation in such amount or amounts, in fee or in trust, as my wife, Georgia S. White, shall have directed or appointed by an instrument in writing duly executed by her and filed with and receipted for by the trustees of this trust during her lifetime. No appointment in trust shall be for a period longer than twenty-one (21) years after the death of the last survivor of my wife, Georgia S. White, and my son, Eric R. White. This power may be exercised from time to time and each appointment may be revoked or modified in the same

manner in which it is exercised. Any such instrument shall refer specifically to this power."

The executor concedes the taxability of the value of Georgia's life interest. It is the present taxation of the remainder ($108,000) to the widow that raises the issues to be decided.

The inheritance tax commissioner argues that under the rule announced by this court in *McLaughlin v. Collins*, 109 Colo. 377, 125 P.2d 633, and affirmed in *Davey v. Weber*, 133 Colo. 365, 295 P.2d 688, and *Zell v. Zell*, 142 Colo. 343, 351 P.2d 272, the corpus of the marital trust, including the $108,000, is subject to taxation upon the death of Ken White under the provisions of C.R.S. 1963, 138-3-20 (1967 Amendments are not applicable here). The rule announced in the cases above cited is that an unqualified power given a life tenant to dispose of property devised by will enlarges the life estate to a fee simple title.

The executor contends that while the value of Mrs. White's life estate is taxable upon the death of her husband, the remainder interest in the marital trust is taxable under C.R.S. 1963, 138-3-12 at the time of her death and not before.

 We must construe the statutes governing inheritance taxes as they are related to each other as a whole. An inheritance tax is based upon the shifting of economic benefits in possession and enjoyment. Such a tax is levied upon the right or privilege of succeeding to property. It is based upon the transfer and operates instantly upon the death of the donor. It is not laid on the donor but on the beneficiary. *Milliken v. People*, 106 Colo. 6, 102 P.2d 901.

 Under the rule announced in *McLaughlin v. Collins, supra*, the granting of a life estate, coupled with an unqualified power to destroy the remainder, operates as a grant of a fee simple title. Under the trust indenture before us there is no "unqualified" power over the remainder given to Mrs. White. The corporate trustee, not

Mrs. White, may invade the trust corpus to maintain a standard of living comparable to that enjoyed by her in March 1957. Testimony at the hearing proved that her present standard of living was much better than in 1957 and that any discretionary invasion of the corpus by the trustee to maintain living standards was highly improbable.

The attorney general argues that the power of appointment bestowed upon Mrs. White and the power of invasion given the trustee, which is strictly limited by an express objective standard, operate to confer upon Mrs. White an unqualified power to destroy the remainder, and by exercise of this power of appointment to "create a new design for the testator's estate."

In *Colorado Springs National Bank v. United States,* 255 F. Supp. 390, the court in determining whether the *McLaughlin* rule was applicable stated:

"Thus, the test which emerges from *McLaughlin* is whether the will authorized the spouse to sell and use all of the property as she desires and thus authorizes her to destroy the remainder interests."

Although this court is not bound by the language above quoted, it is a fair statement of the coverage of the McLaughlin rule. In applying this test to the powers granted to Mrs. White in the instant case, the attorney general argues:

"1. That she did have the entire control by virtue of her general power of appointment of when, to whom, and for what purposes the remainder interest was to be used;

"2. That she could by the exercise of her general power of appointment create a new design for the disposition of the testator's estate; and,

"3. That her general power of appointment was unqualified and was exercisable in such manner as to destroy the remainder interest."

From these assumptions the attorney general argues that the interest passing to the widow was an unlimited, unrestricted and unqualified power, the effect of which

vested in her an absolute fee simple title in and to the full corpus of the marital trust, and that an inheritance tax is therefore collectible on such interest immediately upon the death of White, the donor.

## QUESTIONS TO BE DETERMINED

First. *Did the power of appointment given by Ken R. White to his surviving wife invest her with the power to control when, to whom, and for what purposes the remainder interest was to be used?*

■ This question is answered in the negative. It is clear that Mrs. White was given no power to destroy the remainder interest. She could not "sell and use all the property as she desires." The power of invasion was a very limited one, and it was not vested in her. Admittedly, by the exercise of powers granted to her, she could change the identity of the remaindermen but the remainder interests — the assets to be transferred — could not be tampered with or in any manner be destroyed by her. There is a great difference between the power to change the names of the remaindermen and the power to destroy or detract from the corpus of the remainder. Mrs. White does have the power to designate to whom, and, in a limited way, for what purposes the remainder interest is to be used. She has no power whatever to direct *when* the economic benefits in possession and enjoyment shall vest in those who may ultimately destroy the remainder. The instrument of trust irrevocably fixes that time as the date of her death.

■ In *First National Bank v. People,* 158 Colo. 101, 405 P.2d 730, this court held that a much stronger statement authorizing invasion of the corpus of the life estate than is found in this action did not have the effect of raising the life estate to a fee simple title for the purpose of collecting inheritance taxes. A limited or qualified power of invasion by the life tenant is not in and of itself sufficient to grant a fee simple title. In the instant action all that was granted was a power of appointment with *no* lifetime invasion power in the life beneficiary. The power

vested in Mrs. White was far less than that vested in the widow in the case last above cited, in which no fee simple title was held to have been created. The argument of the attorney general in this connection cannot be sustained and the trial court committed no error in connection therewith.

Second. *Could Mrs. White by the exercise of her power of appointment create a new design for the disposition of her husband's estate?*

This question is answered in the negative. Much that has been said with relation to the first question above is equally applicable to the one now under consideration. The "design" for disposition of the estate of Ken R. White is that created by him alone. His "design" was that a life estate should go to his widow, and that the remainder should go to such recipients as his widow should appoint, within certain limits which were specifically mentioned. In his own "design" he provided for ultimate disposition in the event that his widow failed to exercise her power of appointment. Exercise of this power by her could only effectuate the "design" for disposition of the estate as envisioned by Ken R. White. He gave his widow a power to effectuate his own intent which was also found to be the case in *First National Bank v. People, supra.*

Third. *Was the widow's power of appointment "unqualified" and exercisable in such manner as to destroy the remainder interest?*

This question is answered in the negative. As already shown, Mrs. White could not exercise the power in such manner as to destroy the remainder asset. We repeat that the power to alter the identity of the remainderman is a far different thing from the power to destroy the remainder — the underlying assets. Mrs. White had the power to alter the identity of the remainderman and thus effectuate the design for the disposition of the assets as envisioned by her husband. She could not invade the underlying assets, the remainder interests, and destroy them.

The conclusions arrived at as hereinabove set forth are conclusive of the issues to be resolved and make it unnecessary to discuss other arguments presented.

The judgment is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE LEE not participating.