535 P.2d 227 (1975)
In re the ESTATE of George COLMAN.
PEOPLE of the State of Colorado ex rel. Joseph DOLAN, Executive Director, Department of Revenue, State of Colorado, Plaintiff-Appellant,
v.
GREELEY NATIONAL BANK, Individually, and as Executor of the Estate of George Colman, Defendant-Appellee.
No. 74-035.
Colorado Court of Appeals, Div. II.
March 11, 1975.
Rehearing Denied April 1, 1975.
Certiorari Granted June 2, 1975.
*229 John P. Moore, Atty. Gen., James R. Riley, Jr., Dante L. Zarlengo, Asst. Attys. Gen., Denver, for plaintiff-appellant.
Miller, Ruyle, Steinmark & Shade, William E. Shade, Greeley, Lentz, Evans & King, Hover T. Lentz, Robert A. Wherry, Jr., Denver, Dawson, Nagel, Sherman & Howard, Douglas M. Cain, Denver, Simon, Eason, Hoyt & Malone, Richard H. Simon, Englewood, for defendant-appellee.
Selected for Official Publication.
SMITH, Judge.
The Department of Revenue appeals from a judgment of the trial court holding that certain trust assets held and administered by Greeley National Bank were not subject to an inheritance tax which had been assessed by the Department. We affirm.
The primary questions upon appeal are: (1) In a trust which is subject to a vested general power of appointment by will and a vested special power of appointment by deed, does 1967 Perm.Supp., C.R.S.1963, 138-3-12(3), defer the imposition of inheritance tax upon a remainder interest until the death of the donee of the powers and, (2) does the power of a discretionary trustee to invade the remainder interest of a trust for the primary benefit of the beneficiary create a "contingency" within the meaning of 1967 Perm.Supp., C.R.S.1963, 138-3-20, and thereby render the remainder interest taxable?
On January 27, 1967, George Colman established a revocable, inter vivos trust for the benefit of himself and his wife and children. Although the trust was amended on occasion, it was not revoked prior to Mr. Colman's death on December 31, 1971. On the date of his death, the assets of Mr. Colman's trust were held by the Greeley National Bank of Greeley, Colorado, as trustee. Mr. Coleman was survived by his wife and four children. Upon the death of Mr. Colman, the Greeley National bank, pursuant to Article VI of the trust agreement, divided the trust estate into two separate trusts, trust "A" and trust "B". Trust "A" consisted of $60,091.63 and trust "B" consisted of $60,065.01.
The trust agreement grants Mrs. Colman a life estate in both trusts and gives Mrs. Colman the right to require that the trustee distribute principal to her in an amount not exceeding $5,000 or 5% of the total trust estate, whichever is greater, in any one year. This has been referred to as the "five and five power."
For purposes of Colorado inheritance tax, the Department of Revenue determined that the value of Mrs. Colman's life estate was $12,629.07 and the right of Mrs. Colman to withdraw limited amounts or principal each year had a taxable value of $20,838.70. Both of these valuations were computed based upon the life expectancy of Mrs. Colman at her husband's death, in accordance with C.R.S.1963, 138-3-19. The parties stipulated to the correctness of the valuation and the taxation of these interests.
Both trusts "A" and "B" are subject to Mrs. Colman's vested special power of appointment by deed exercisable by Mrs. Colman during her lifetime. This special power of appointment can only be exercised in favor of the four Colman children, their spouses or descendants, or to organizations existing primarily for charitable, educational, or religious purposes. Trust "A" is additionally subject to a vested general power of appointment by will exercisable by Mrs. Colman. After the death of Mrs. Colman, should she not have elected to exercise her vested powers of appointment, the trust assets remaining, after the *230 closing of her estate are to be distributed in four equal shares to the Colman children, or if any of the children should be deceased, then to their respective surviving spouses or issue. The trust instrument grants to the trustee, Greeley National Bank, the discretionary power to invade the trust corpus, for the benefit of Mrs. Colman.
The trustee treated the receipt of the vested powers of appointment by Mrs. Colman over the remainder interest as a non-taxable event pursuant to 1967 Perm.Supp., C.R.S.1963, 138-3-12(3), (Section 12(3)) which states, in pertinent part:
"Whenever property is transferred by a decedent and any person, institution, or corporation receives a vested general power of appointment by will, or vested special power of appointment by will or by deed, with respect to the property transferred or any part thereof, the transfer shall not be a taxable transfer to the extent to which the property is subject to the power; but whenever any right, interest, or estate in the property or in the property derived therefrom, passes at or after the death of a donee of any such power to any appointee or taker in default of appointment, whether by the partial or complete exercise of the power, or upon the lapse of the power, a taxable transfer shall be deemed to take place from the donee to the appointee or taker in default at the then value of the right, interest, or estate and at the rates and subject to the exemptions then in effect. . .."
The Revenue Department, however, determined that the entire amount remaining in the trusts after the initial assessment of tax should be immediately taxable and determined that remainder as follows:

Original Estate $ 122,664.57
Less undisputed taxable interests:
 Life Estate $ 12,629.07
 $5000 or 5%
 invasionary power 20,838.70
 Amount passing under
 will 250.00
 __________
 33,717.77
 ============
Remainder Interest $ 88,946.80

The Revenue Department Assessed inheritance tax on the remainder interest of $88,946.80, which is subject to the vested powers of appointment. It contended that the interests in the property subject to the powers of appointment were dependent upon a contingency and consequently the remainder was immediately taxable pursuant to 1967 Perm.Supp., C.R.S.1963, 138-3-20(2) (Section 20). That statute states in pertinent part:
"Whenever property is transferred in trust or otherwise, and any right, interest, or estate therein is dependent upon any contingency or conditions, other than the exercise, lapse, or nonexercise of a vested power of appointment, whereby it may be wholly or in part created, defeated, extended, or abridged, a tax shall be imposed and paid upon said transfer . . .."
The trial court found that the remainder interests are not subject to immediate inheritance taxation because those interests are subject to a general power of appointment by will and to a special power of appointment by deed, and that, therefore, under 1967 Perm.Supp., C.R.S. 1963, 138-3-12(3), such property is not subject to inheritance taxation until the exercise of the powers or until death of the donee of the power. The court also concluded that 1967 Perm.Supp., C.R.S.1963, 138-3-20(2), was inapplicable.

I
We first address the issue of whether Section 12(3) defers taxation of the remainder interest in the Colman trusts. We must construe the statutes governing inheritance taxes as they are related to each other as a whole. The philosophy upon which Colorado imposes an inheritance tax is based upon the shifting of economic benefits in possession and enjoyment. The tax is levied upon the right or privilege of succeeding to property. It is based upon the transfer, and operates instantaneously upon the death of the donor or receipt by the donee; however, it is not *231 assessed upon the donor but upon the donee. People ex rel. Dunbar v. Fester, 144 Colo. 316, 356 P.2d 130; People ex rel. Rogers v. Estate of Waterman, 108 Colo. 263, 116 P.2d 204; Millikin v. People, 106 Colo. 6, 102 P.2d 901.
Under these principles, the problem that arises when a life tenant is also the donee of less than an unlimited power of appointment is that it is impossible to determine the correct amount of tax at the death of the settlor of the trust because neither the identity of the ultimate recipients of the corpus nor the amount to be received by them can be determined.
C.R.S.1963, 138-3-12, was amended in 1967 in an attempt to provide an answer to these problems by specifying when and to what extent property which had been transferred subject to a vested power of appointment should be taxed. We construe Section 12(3) as providing that when a general power to appoint a decedent's property by will or a special power to appoint by deed has been transferred by the decedent, the tax should not be levied until the property is actually received by the person in whose favor the power has been exercised or who receives the property upon a failure to exercise the power, for it is at that moment that both the recipient and the amount become known. It is also at this time that the economic advantages of beneficial enjoyment and possession of the property have shifted.
We recognize that 1967 Perm.Supp., C.R.S.1963, 138-3-12(2), provides that where property is transferred, subject to a vested general power of appointment by deed, the transfer to the donee of the power as a fee simple interest. See McLaughlin v. Collins, 109 Colo. 377, 125 P.2d 633. However, under the trust instrument before us there is no "unqualified" power over the remainder except the "five and five" power which was properly taxed to Mrs. Colman. Although the corporate trustee may invade the trust corpus in its discretion for the benefit of Mrs. Colman, she has no power to launch such an invasion, nor has she the power to appoint to herself.
At Mr. Colman's death, Mrs. Colman received a special power to appoint by deed and a general power to appoint by will. These powers govern the ultimate devolution of the remainder interest of the Colman trust. Therefore, applying the clear language of Section 12(3), we hold that the inheritance taxation of this remainder interest must be postponed as provided in that section.

II
The Department argues that since the remainder interests are also subject to an invasionary power by the trustee, section 12(3) cannot operate to defer the tax. Specifically the department asserts that only where the powers of appointment specified in 12(3) are the exclusive powers over the property, can the tax be postponed; that is to say, an invasionary power held by the trustee creates such a combination of powers as to take all of the property out of the 12(3) exemption.
Nowhere in the statute do we find support for the proposition that section 12(3) is operative only where the powers of appointment enumerated therein are the exclusive powers relative to the property. The Department cites no authority nor advances any rationale to support this conclusion. It is common practice to grant to the beneficiary of a trust powers of appointment and also to vest the trustee with some denominated power over the trust assets before the powers of appointment are exercised. In such a situation there are two concurrent types of powersthe fiduciary's power to invade the remainder and the donee's power of appointment over the remainder. Section 12(3) exempts property held under certain powers of appointment from inheritance taxation at the donor's death. Accepting the Department's interpretation of 12(3) that an "additional" power over the corpus destroys the 12(3) exemption would, in effect, negate the entire operation of this statute in many circumstances.
*232 We do not believe that this was the intention of the legislature in enacting the 1967 amendments to the inheritance tax law.

III
Finally the Department argues, that invasionary power granted to a trustee constitutes a "contingency" under section 20. Therefore, the Department concludes that, even if the combination of powers does not defeat the 12(3) exemption, section 20 preempts the operation of section 12(3). As support for this argument, the Department cites In Re Curtis' Estate, 28 Ill.2d 172, 190 N.E.2d 723. However, that case does not speak to the issue of whether the granting of invasionary powers to an independent trustee creates a contingency within the meaning of the Illinois statute. Instead, it construes a statute substantially[1] different from our statute and discusses the problem of whether vested powers of appointment should be excluded from the statute's operation. Section 20 specifically excludes vested powers of appointment from its operation. Even though vested powers of appointment as defined in 1967 Perm.Supp., C.R.S.1963, 107-1-2, do not include those powers held by a fiduciary, we do not believe the contingency or conditions mentioned in Section 20 were intended to include, within their meaning, fiduciary powers of invasion held by a trustee. By denominating a trustee's power of invasion as a contingency, the Department seeks to tax a beneficiary's expectation of receiving property from the trustee as if it were a fee interest. It is true that if, and when, the trustee exercises this discretionary power, such exercise may constitute a taxable event, but only to the extent of the amount disbursed. However, before a life estate becomes a vested fee simple for inheritance tax purposes, the power to invade corpus or to dispose of it must be unlimited and unqualified; that is, the corpus must be available to effectuate a purpose different from that expressed by the settlor of the trust. See First National Bank v. People, 158 Colo. 101, 405 P.2d 730; and Colorado Springs National Bank v. United States, 255 F.Supp. 390 (D.Colo.).
In First National Bank v. People, supra, a much broader authorization to invade the corpus of a life estate than appears here failed to raise the life estate to a fee simple title for inheritance tax purposes. As stated in that case, a limited or qualified power of invasion by the life tenant is not in and of itself sufficient to create a fee simple title. In the case at bar, all that was granted was a power of appointment with no lifetime invasion power in the beneficiary other than the "five and five" power already taxed. The power vested in Mrs. Colman was far less than that vested in the widow in the First National case, in which no fee simple title was held to have been created. Therefore, a fortiori, if a limited power in a life tenant to invade corpus is not sufficient to cause the corpus to be taxable to her as a fee simple interest, then a discretionary power in the trustee over whom she has no control certainly cannot vest her with such an interest.

IV
The Department also argues that it is "inconsistent" to assert that the tax on the remainder interest is postponed by virtue of the existence of the general power of appointment by will or special power of appointment by will or by deed, and yet to argue that the tax on the life income and power to invade over the same property are not postponed. We find no inconsistency in the argument. The department has, in our view, confused ascertainable property interests which have passed directly and outright to Mrs. Colman and thus are taxable pursuant to Section 12(2) with the remainder interest specifically exempted by Section 12(3). See First National Bank v. People, supra, and Colorado Springs National Bank v. United States, supra.
*233 The Department also asserts that the Illinois case, In Re Curtis' Estate, supra, stands for the proposition that the possessor of a power of appointment exercises such control over the property as to justify the assessment of tax upon receipt of the power. The Illinois Statute[2] sets the time when a power of appointment is taxable. It provides that at the time a power of appointment is exercised, it is a taxable transfer. The Illinois statutes, however, are silent on the question of whether the granting of a power of appointment is a taxable event. In comparison, our Section 12(3) expressly classifies the grant of a vested general power of appointment by will or vested special power of appointment by will or by deed as a non-taxable transfer.
We have examined all of the other foreign authority cited to us by the Department and determine that they are inapplicable because they construe statutes substantially different from those of Colorado.
Judgment affirmed.
SILVERSTEIN, C. J. and COYTE, J., concur.
NOTES
[1] Ill.Ann.Stat. ch. 120, § 398 (Smith-Hurd 1974).
[2] Ill.Ann.Stat. ch. 120, § 375(4) (Smith-Hurd 1974).