### No. C-706

**In Re the Estate of George Colman, People of the State of Colorado, ex rel., Joseph Dolan, Executive Director, Department of Revenue, State of Colorado v. Greeley National Bank, individually and as Executor of the Estate of George Colman**

(552 P.2d 1)

Decided July 6, 1976.

J. D. MacFarlane, Attorney General, Jean Dubofsky, Deputy, Edward Donovan, Solicitor General, James R. Riley, Jr., Assistant, Morton H. Letofsky, Special Assistant, for petitioners.

Miller, Ruyle, Steinmark and Shade, William Shade; Dawson, Nagel, Sherman and Howard, Douglas M. Cain; Lentz, Evans and King, Hover T. Lentz, Robert A. Wherry, Jr.; Simon, Eason, Hoyt and Malone, Richard H. Simon, for respondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The inheritance tax statute, which is before us for interpretation, has been construed by the Court of Appeals. *In re Estate of Colman*, 35 Colo. App. 390, 535 P.2d 227 (1975). We granted certiorari and now affirm.

The issues before us were framed in the Court of Appeals. The questions are:

(1) In a trust which is subject to a vested general power of appointment by will and a vested special power of appointment by deed, does 1967 Perm. Supp., C.R.S. 1963, 138-3-12(3), defer the imposition of inheritance tax upon a remainder interest until the death of the donee of the powers?

(2) Does the power of a discretionary trustee to invade the remainder interest of a trust for the primary benefit of the beneficiary create a contingency within the meaning of 1967 Perm. Supp., C.R.S. 1963, 138-3-20, and thereby render the remainder interest taxable?

Both the trial court and the Court of Appeals answered the first question in the affirmative and the second in the negative.

The record establishes that George Colman created a revocable intervivos trust and named the Greeley National Bank as trustee. At the time of his death, he was survived by his eighty-year-old wife and four adult children. Upon his death, the Greeley National Bank, pursuant to the terms of the trust agreement, divided the trust estate into two separate trusts (Trust "A" and Trust "B"). The amounts, respectively, in Trust "A" and Trust "B" were $60,091.63 and $60,065.01. Mrs. Colman, the surviving widow, was granted a life estate in both trusts. She had the right to require that the trustee distribute principal to her in an amount not exceeding $5,000 or 5% of the total trust estate, whichever is greater, in any one year. For brevity, this power which was granted to the widow will be referred to as the "five and five power."

For the purpose of computing the Colorado inheritance tax, the department of revenue determined that the value of Mrs. Colman's life estate was $12,629.07 and that the "five and five power" had a taxable value of $20,838.70. The valuations, which were stipulated to and are not in dispute, were computed on the basis of the life expectancy of Mrs. Colman at the time of her husband's death. C.R.S. 1963, 138-3-19.[1] The primary dispute centers on powers of appointment which could be exercised by Mrs. Colman by will and by deed under the terms of Trust "A" and Trust "B."

Mrs. Colman, under the trust agreement, was granted a vested special power of appointment by deed, which she was permitted by the terms of the trust to exercise only in favor of the four children, their spouses or descendants, or to organizations existing primarily for charitable, educational, or religious purposes. In addition, Trust "A" is subject to Mrs. Colman's vested general power of appointment by will. Upon the death of Mrs. Colman, if she had not exercised her vested powers of appointment, the remaining trust assets were to be distributed in four equal shares to the Colman children. In addition, the trust provided the Greeley National Bank with the power to invade trust corpus for the benefit of Mrs. Colman

---

[1] Now section 39-23-116, C.R.S. 1973.

to meet her needs and expenses.

In preparing a Colorado inheritance tax application, the attorneys treated the vested powers of appointment as non-taxable events on the basis of 1967 Perm. Supp., C.R.S. 1963, 138-3-12(3).[2] The statutory language upon which the return was predicated provides:

"(3) Whenever property is transferred by a decedent and any person, institution, or corporation receives a vested general power of appointment by will, or vested special power of appointment by will or by deed with respect to the property transferred or any part thereof, the transfer shall not be a taxable transfer to the extent to which the property is subject to the power. . . ."

As required by this section, the remainder interest of the trust was treated as not presently subject to an inheritance tax in Mr. Colman's estate. The basis for computation of the remainder was:

| | | |
|---|---:|---:|
| Original Estate | | $122,664.57 |
| Less: Life Estate | $12,629.07 | |
| 5 and 5 Power | 20,838.70 | |
| Amount passing under will | **250.00** | **$ 33,717.77** |
| Remainder Interest | | $ 88,946.80 |

The inheritance tax department concluded that the remainder interest which was subject to the vested powers of appointment was part of the taxable estate. 1967 Perm. Supp., C.R.S. 1963, 138-3-20(2).[3] The inheritance tax department, in reaching its conclusion, asserted that the interest in the trust estate that was subject to the powers of appointment was dependent upon a contingency and was, therefore, presently taxable to Mrs. Colman. An assessment was made, objections were filed to the assessment, and the matter was determined by the district court for Weld County in accordance with the provisions of C.R.S. 1963, 138-3-46.[4] Both the district court and the Court of Appeals sustained the taxpayer's objections to the assessment.

■ For clarity, we will refer to the statutory sections which are before us for construction as Section 12(3) and Section 20(2). The issue which we must resolve is:

Does Section 12(3), when viewed with an eye to Section 20(2), operate to postpone inheritance taxation of property subject to a vested general power of appointment by will or vested specific power of appointment by will or by deed until the death of the donee of the power?

We answer the question in the affirmative.

[2]Now section 39-23-110, C.R.S. 1973.
[3]Now section 39-23-117(2), C.R.S. 1973.
[4]Now section 39-23-142, C.R.S. 1973.

## I.
### History

An inheritance tax is a succession tax, as distinguished from an estate tax. *In re Inheritance Tax Macky Estate*, 46 Colo. 79, 102 P. 1075 (1909). Thus, an inheritance tax is not imposed upon property as such, but upon the transferee's privilege of receiving property. *People v. Fester*, 144 Colo. 316, 356 P.2d 130 (1960); *People v. Estate of Waterman*, 108 Colo. 263, 116 P.2d 204 (1941). The tax is accordingly levied at the time such transferee obtains either the use or the beneficial enjoyment of the property.

A problem arises, however, when the life tenant is also the donee of a limited power of appointment. When such a situation exists, the tax cannot be accurately assessed at the time of the donor's death because neither the beneficiaries nor the property which is the subject of the power of appointment is known. The general assembly passed 1967 Perm. Supp., C.R.S. 1963, 138-3-12(3),[5] which specifies the extent to which the property which is subject to a vested power of appointment may be taxed. Section 12(3) now provides that the testamentary transfer of property which is subject to either a vested general power of appointment by will or a vested special power of appointment by will or by deed is a non-taxable event. The tax is levied upon the transferee only when he actually obtains the right to receive the property, whether by virtue of the exercise or the lapse of a power of appointment. His taxable liability is then predicated upon the value of the right at that time.

The effect of Section 12(3) is clearly to postpone the taxation of inherited property, subject to specified powers of appointment, until both the transferees and the amount of property to which they are entitled are ascertainable. This is, of course, in keeping with the underlying rationale of inheritance taxation.

## II.
### The Applicability of Section 12(3)

Turning to the case at bar, we find that Mrs. Colman received the right to exercise a special power of appointment by deed and a general power to appoint by will. The fact that the corpus of the remainder subject to those powers may have diminished as a result of the independent fiduciary's invasionary power, of course, does not render Mrs. Colman's interest contingent; she is not thereby divested of her *present right to exercise* the powers of appointment. C.R.S. 1963, 107-1-4.[6] On its face, then, Section 12(3) operates to postpone the taxation of that portion of the remainder interest subject to Mrs. Colman's powers of appointment.

---

[5]Now section 39-23-110, C.R.S. 1973.
[6]Now section 15-2-104, C.R.S. 1973.

■ We are not persuaded by the petitioners' contention that Section 12(3) is inapplicable unless the powers of appointment specified therein are the *exclusive* powers over the property. As the Court of Appeals properly concluded, there is simply no support in the statute for such an exotic inference. Indeed, settlors often vest concurrent powers in the beneficiary to appoint, and in the trustee to invade. In light of this common practice, the legislature chose expressly to postpone under Section 12(3) the taxation of property held subject to certain powers of appointment. This fact certainly more logically supports the inference that Section 12(3) *is* to apply in the case of concurrent powers than that it is not. In any case, like the Court of Appeals, we hesitate to accept an interpretation of Section 12(3) which would negate its very operation in many circumstances.

### III.
### The Effect of Section 20(2) Upon Section 12(3)

■ We do not accept the construction urged by the petitioners. In our view, the invasionary power granted the independent fiduciary in this case does not constitute a "contingency" such as to preempt the application of Section 12(3) and bring Section 20(2) into operation.

The effect of this approach would be to tax Mrs. Colman's mere expectation of receiving property from the trustee as if it were a present fee interest. Past cases do not support such an interpretation and indeed require that the invasionary power be unqualified to raise a fee interest. *The First National Bank of Denver v. People (Weisbart Estate)*, 158 Colo. 101, 405 P.2d 730 (1965), for example, involved a life tenant's *personal* power of invasion much broader than that vested in the *independent* fiduciary here and yet held that a qualified power of invasion vested in the life tenant does not give rise to a fee simple title. *See also Colorado Springs National Bank v. United States*, 255 F.Supp. 390 (D. Colo. 1966).

Mrs. Colman had no unqualified right to invade other than the "five and five power"; any invasion for her benefit by the trustee was wholly within the trustee's discretion and was not subject to her control. In *The First National Bank of Denver v. People, supra*, we refused to raise a life tenant's qualified power of invasion to a fee interest, and the same result logically follows where the life tenant has no power to compel the trustee's disbursements to any degree. The distinction between the present right to receive property and a qualified expectation of receiving property is fundamental to inheritance taxation.

Section 20, furthermore, expressly excludes vested powers of appointment from its operation. Fiduciary powers are not among the vested powers of appointment as defined by 1967 Perm. Supp., C.R.S. 1963, 107-1-2.[7] We agree with the Court of Appeals, however, that to construe Section 20

---

[7]Now section 15-2-102, C.R.S. 1973.

contingencies as embracing fiduciary powers of invasion held by a trustee would be contrary to the unqualified-power-to-invade rule of *The First National Bank of Denver v. People, supra.*

In the instant case, Mrs. Colman's grant of an unqualified "five and five power" was properly classified as a presently taxable event. To similarly tax as a presently vested fee interest, however, the remainder of the corpus which she may in fact never ultimately receive would violate both our precedent and the present-right-to-receive rationale of the inheritance tax.[8]

Section 12(3) thus clearly applies to postpone the taxability of that portion of the remainder subject to Mrs. Colman's powers of appointment. Section 20(2) in no way preempts its operation.

The judgment of the Court of Appeals is, therefore, affirmed.

MR. JUSTICE HODGES does not participate.

---

[8]Our conclusion in this regard is buttressed by the 1975 amendment to Section 20, which clearly subordinates that section to Section 12(3). Section 39-23-117(4), C.R.S. 1973, now provides that:

"(a) If property is subject to a power of appointment which causes the property to be taxed under section 39-23-110 and is also subject to a fiduciary power, then the property shall be taxed under section 39-23-110 and shall not be taxed under this section. If property is subject to a fiduciary power and is not subject to a power of appointment which would cause the property to be taxed under section 39-23-110, then the property shall be taxed under this section.

"(b) Tax may be imposed under this section on beneficiaries of a fiduciary power, except that: The beneficiary of a life or terminable interest in trust shall not be taxed as a contingent or vested remainderman; or the beneficiary of a life estate or terminable interest in trust shall not be taxed on any estate, interest, or property which the beneficiary shall or may receive pursuant to a fiduciary power as a preferred beneficiary or as a potential beneficiary of the trust principal during the term of the trust, unless the will or instrument expressly designates such beneficiary as a contingent or vested remainderman.

"(c) As used in this subsection (4), the term 'fiduciary' means a guardian, trustee, personal representative, executor, administrator, receiver, conservator, or any person acting in any fiduciary capacity, and the term 'fiduciary power' means any power, including a power which would be a power of appointment under section 15-2-102(1), C.R.S. 1973, if held by a person, institution, or corporation in a fiduciary capacity."

*See also* W. *Huff, Colorado Estate Planning,* § § 12.31 and 12.32 (1972), and *H. Parks, Colorado Probate Practice Manual* (1964) and April 1974 Supplement thereto.